MINKLEY *v.* TOWNSHIP OF SPRINGWELLS.

1. BRIDGES — DEFECTIVE RAILINGS — PERSONAL INJURIES — PROXI-
MATE CAUSE—LIABILITY OF TOWNSHIP.

A township which permits the side railing of a bridge to be-
come and remain out of repair is liable for injuries occasioned
by its giving way and allowing a horse, which shies against it,
to fall with the driver to the ground below, where the fright
of the horse was due to the tipping of planks improperly
nailed; but, if some object outside of the bridge was the
proximate cause of the horse's taking fright, the township
is not liable.

2. TRIAL—AMENDMENT OF DECLARATION.

It is not error to permit the plaintiff to amend his declaration
by adding a count thereto which sets forth no new cause of
action, particularly where no claim of surprise is made by the
defendant.

3. SAME—EVIDENCE—REOPENING CASE.

It is within the discretion of the court to permit the plaintiff
to reopen the case and introduce further direct testimony
after the defendant has rested, although the practice is not
approved.

Error to Wayne; Daboll, J., presiding. Submitted
April 6, 1897. Decided June 7, 1897.

Case by Minnie A. Minkley against the township of
Springwells for personal injuries. From a judgment for
plaintiff, defendant brings error. Affirmed.

*F. W. A. Kurth* ( *Samuel W. Burroughs*, of counsel ),
for appellant.

*Frank T. Lodge*, for appellee.

LONG, C. J. Plaintiff was injured March 1, 1893, by
her horse shying, and going off the bridge over Roulo
river, in defendant township. This action is for dam-
ages for injuries sustained thereby. Plaintiff is a married

woman, living in Wayne. She and her husband, on the morning in question, started to drive from their home to the city of Detroit, in a sleigh drawn by one horse. The husband was a skillful driver, and the horse a steady one. The bridge in question is 98 feet long and 16 feet wide, and built of wood. It has railings upon either side, extending the whole length, as well as upon the approaches. The planks covering it are laid crosswise. The plaintiff's husband testified as to what took place when the parties reached the bridge substantially as follows:

"As I drove on the approach to the bridge, the plank kind of creaked, and seemed to be a little loose. It jumped up, and the horse sheered to one side. It tipped up just to one side. I think the horse's feet stepping on the plank made it tip. It seemed to jump, making a creaking noise. I didn't notice particularly, but it jumped four, five, or six inches; I couldn't say for sure. I noticed particularly the horse sheered at the same time. He sheered to one side; struck the railing. The railing went over, and we went with it. The side of the horse struck the railing."

It appears by the plaintiff's testimony that this railing was made of 2 by 6 uprights and inch boards. It was rotten at the bottom where it was fastened to the bridge, and, as plaintiff's husband says, had been rotten for more than a year, with dry rot, both at the bottom and at the top where the boards were fastened. The railing was from 3 to 3½ feet high. The witness further testified that he examined the planking of the bridge on the same day, and at the place where the horse shied. He found them "dozy" and loose. Several planks were in this condition. He further testified that the tipping or jumping up of the planks and the sqeaking of them made his horse start, and caused him to "sheer;" that he was driving on a walk, and driving carefully along. It appears that this railing was not braced, but was supported by the uprights, the strip of railing being from 24 to 26 feet long before reaching the truss. The bridge had been built about 20 years. Several witnesses were called by the defendant, who tes-

tified that they had frequently traveled over the bridge, and noticed no loose planks, several of them going over it that same day.   Some of the witnesses testified to a log's being in the creek some distance from the place where the horse went over, and some claim was made that the horse was frightened at this log; Dr. Clippert saying that plaintiff's husband told him on the same day that the horse took fright at some log or something at the side of the bridge.   The overseer of highways testified that, two weeks before the accident, he examined the bridge, and saw nothing out of repair.   The witness also testified that, three years before the accident, he had put in new planking all over it.   After the defendant rested, plaintiff called a witness who testified that he drove over the bridge before March 1st, and saw that the planks were not spiked down; that they were badly worn and loose; that this was long before March; and that he drove over it again the February before.

At the close of the testimony, counsel for defendant submitted several requests to charge, and, upon the refusal of the court to give the third and fourth, error is assigned.   They are as follows: ·

"3. If the plaintiff's driver knew that said bridge was unsafe, and that there were other safe roads to reach her destination, then she contributed to her injury, and verdict must be for defendant.

"4. If the defendant's officers, two weeks prior to the accident, used due diligence in ascertaining the condition of the bridge, and found no defects in the same, and no defects had been reported to it, then the verdict must be for the defendant."

There is no evidence in this record that the plaintiff's husband knew the bridge to be in a dangerous condition before going over it.   Counsel for defendant, in their strictures upon the charge of the court upon the question of contributory negligence, say in their brief that the court was in error, because "there is no evidence in the record tending to show that plaintiff or her husband knew that * * * the bridge was in a dangerous condition.   He

simply said that, in passing over it some one, two, or three months before, he should judge it was in poor condition." In the light of the testimony and this concession of defendant's counsel, no further notice need be taken of this claim.

As to the fourth request to charge, the court, we think, sufficiently covered it in the general charge. The court said:

"It is claimed by the defense that it made an inspection of this bridge shortly before this; and, on the other hand, it is claimed that it did not. If it had made a reasonably diligent and fair inspection of this bridge within a week or so before this, using all reasonable efforts to ascertain if there was a rotten or weak space,—I am speaking now of the railing,—and had not been able to find it, then the defendant would be excused as to that particular branch of the case."

The proofs do not disclose that any examination whatever was made of this railing. The overseer of highways, who seems to have had this bridge in charge, under the direction of the highway commissioner, did visit the bridge, as he says, about two weeks before the accident; but he does not state that he made any examination of the railing, or just what particular examination he did make. It was not contended that the defendant had actual notice or knowledge that the bridge was defective or in bad condition; but the claim upon the trial was that the defects had existed for such a length of time that the defendant should have known its condition, and was negligent in not having ascertained its condition. We think there was ample evidence to support this contention.

Defendant asked the court to direct the verdict in favor of the defendant. This was properly refused. The question was very fairly and fully submitted to the jury as one of fact as to the negligence of the defendant. They were instructed that they were to find whether, from all the circumstances in the case, a railing was necessary, and, if so, whether it was sufficient under the circum-

·stances.  In speaking of the frightening of the horse, the
·court said:

"It is claimed that the planks were loose, not properly
spiked down; had become thin by wear, so that the horse,
when he passed upon them, and his feet struck them as he
passed along, disturbed them; they flew up or pointed up;
that that made a noise or creaking, and that frightened
the horse; that he then swerved or shied to the side, struck
against the railing, and it, being too weak to stop him,
gave way, and the horse and sleigh and its occupants were
all precipitated to the ice or ground below. * * * If
you find that the planks at this point were in good condi-
tion, the bridge safe, so far as that part is concerned, and
the horse, by reason of some other object aside from the
defective plank or flooring of the bridge, became fright-
ened, and that was the proximate cause of his fright, and
he then ran and broke through, and went upon the ground
below, and the accident happened that way, the township
would not be liable, because it is not liable for the fright
of the horse at something besides the defect in the high-
way. * * * If, on the other hand, as I said before,
he was frightened at something that the township should
have kept in repair, and did not, or was obliged to keep in
repair, then it would be."                                    ⸳ \

This charge was a correct statement of the law.  *Ross
v. Township of Ionia,* 104 Mich. 325.  The court further
properly and fully charged the jury upon what would be
constructive notice to the township of the defects claimed
to have existed in the bridge.  This charge was fully borne
out by the evidence.  The court therefore very properly
refused to direct a verdict for the defendant.

We may pass over several of the claimed errors, as not
based upon proper exceptions.  But counsel contend that
the court was in error in permitting counsel for plaintiff
to amend his declaration by adding a new count.  The
only objection made was that "it is rather late, and gives
defendant no time to consider it."  No adjournment was
asked, nor was any claim made of surprise.  No new
cause of action was introduced by the amendment.  The
court very properly permitted the amendment.  *Edwards
v. Village of Three Rivers,* 102 Mich. 153.

The court permitted the plaintiff to reopen the case, and put in further testimony by one witness as to the condition of the bridge before the accident. While this practice is not approved, yet it was a matter within the discretion of the court, and the verdict cannot be set aside for that reason.

We have examined the other questions carefully, and find no error.

The judgment must be affirmed.

The other Justices concurred.