THOMAS CANNING CO. *v.* JOHNSON.

1. STIPULATIONS—BINDING UPON PARTIES.

A stipulation is equivalent to a finding of facts by the court or the special verdict of a jury in its binding force upon the parties thereto.

2. SAME — EVIDENCE — PROOF OF OMITTED FACT — ADMISSIBILITY— DISCRETION OF COURT.

Where it appeared on the argument that the plaintiff had omitted to include in the stipulation a fact upon which its right of recovery depended, and which in no way tended to modify or change any fact so agreed upon, *held*, within the discretion of the trial judge to permit proof of such fact to be received.

3. CONTRACTS—CONSTRUCTION.

A contract in writing, whereby defendant sold to plaintiff a quantity of tomato pulp in tin containers, agreeing to store same free of charge until ordered shipped by plaintiff, which was to be within a certain fixed date, and also agreeing to repurchase the empty tins if returned to him "in as good condition as when received by buyer," construed, and *held*, to mean that the tins were to be returned to defendant in the condition they were in when they actually came into possession of plaintiff.

4. SAME—RISKS ASSUMED—STORAGE.

The rusting of the tins while in storage in possession of defendant awaiting shipment to plaintiff, *held*, under the contract, a risk assumed by defendant.

5. SAME—PASSING OF TITLE IMMATERIAL.

Since the right of plaintiff to return the tins to defendant at the contract price depended upon the condition they were in when received by plaintiff, the question as to when title to the pulp passed, *held*, immaterial.

6. SAME—DELIVERY—TENDER—REFUSAL TO ACCEPT—EFFECT.

Defendant's contention that plaintiff cannot recover the price of the tins because of its failure to offer to return same, cannot be sustained, where it appears that defend-

ant notified plaintiff that on account of the rusty condition of the tins he could not accept them, and did refuse to accept a car load which plaintiff shipped; plaintiff not being required to incur needless freight expense, or to assume that defendant might change his mind.

7. SAME—FINDING OF FACT—EVIDENCE—SUFFICIENCY.

The finding of the trial judge that the tins, when emptied and ready for shipment to defendant, were in the same condition, so far as rust was concerned, as when received by plaintiff, *held*, supported by the proofs.

Error to Kent; Brown (William B.), J. Submitted October 15, 1920. (Docket No. 2.) Decided December 21, 1920.

Assumpsit by the Thomas Canning Company against Grafton Johnson for breach of a contract. Judgment for plaintiff. Defendant brings error. Affirmed.

*Norris, McPherson, Harrington & Waer* (*Ivory J. Drybread,* of counsel), for appellant.

*Colin P. Campbell,* for appellee.

SHARPE, J. On January 12, 1915, the plaintiff, a corporation doing business at Grand Rapids, and defendant, a resident of Greenwood, Indiana, entered into a contract in writing whereby the defendant sold to plaintiff "Twelve thousand dozen No. 10 Tomato Pulp at the Fame Canning Company's plant, at Tipton, Ind., at $1.75 per dozen, F. O. B. cars, Tipton, Ind." The other provisions of the contract material to the issue here presented are as follows:

"Shipments: To be made as ordered. All of the goods to be shipped by Dec. 1st, 1915. * * *

"Storage: Seller agrees to store pulp free of charge until ordered shipped by the buyer.

"Insurance: Seller is to insure pulp at his expense,

until May 1st, 1915, when the buyer shall insure what portion still remains unshipped.

"Guarantee: Seller guarantees pulp against leaks and swells, until the pulp is received. It is agreed that any swelled cans shall not be considered a part of this contract.

"Containers: Seller agrees to repurchase from buyer, all empty tins, at 4c each, F. O. B. Grand Rapids, to be shipped in car load lots at buyer's option, at any time that a sufficient quantity of the tins are empty to make a car load. Tins guaranteed to be in as good condition as when received by buyer."

At the opening of the trial a stipulation of facts was entered into between counsel for the respective parties, the material parts of which are summarized and quoted from as follows:

Immediately after the execution of the contract, the cans sold were separated from other pulp owned by defendant and placed by themselves in a corner of the Fame Canning Company's warehouse at Tipton. The containers were at that time free from rust and suitable for re-use. The defendant thereupon issued a warehouse receipt to plaintiff, which recited that the Fame Canning Company held such stock in storage as the property of plaintiff, "insurance at buyer's risk after May 1, 1915," which receipt was received and accepted by plaintiff. On May 1, 1915, plaintiff took out insurance in its favor and as owner of the pulp. Plaintiff's president had visited the Fame Canning Company's plant and inspected the warehouse in which it was understood the pulp was to be stored, and in which it was stored, and was familiar with the conditions surrounding such storage. It was built of brick, was in a good state of repair, and "was sufficient to and did fully protect said cans from the outside elements." The defendant "exercised ordinary and usual care in the storage and protection of said pulp and the containers thereof." Both parties knew

that such containers could be used again for canning pulp if "bright and free from rust when emptied and were properly sealed, emptied, washed and dried, and otherwise properly cared for after emptying so as to prevent rusting," and that they were of the value of 4 cents each for such purpose, but that if not in such condition they "could not be used again for such purposes or for any purpose whatever and were of no value." The containers were in good condition when the contract was entered into.

"During the period from May 1st to October 1st, the defendant repeatedly requested plaintiff to remove said pulp from the warehouse, but no part of it was removed until the latter part of October, and the greater part of it not until the latter part of November, 1915.

"During the months of August and September, 1915, throughout the State of Indiana there was an unusual amount of rainfall and excessive moisture in the atmosphere, which fact was known to the plaintiff at the time.

"It was also a fact known to the plaintiff at the time, that under such weather conditions canned goods of the kind sold by defendant to plaintiff, stored in the ordinary factory warehouses without facilities for artificial drying, as said goods were stored, and as it was contemplated by the parties at the time of the contract that they should be stored, will condense a great amount of moisture from the air upon the cans, which causes the cans to rust if such weather conditions continue for any considerable length of time."

Early in October, 1915, the defendant caused the pulp to be inspected and discovered that the containers were rusting because of said weather conditions, and on the 13th of that month notified plaintiff of that fact by the following letter:

"October 13, 1915.

"THOMAS CANNING CO.,
    "Grand Rapids, Mich.
    "*Gentlemen:* The writer just returned from a visit

to the Tipton factory. It strikes me that you should arrange to move your lot of No. 10 tins of pulp at the earliest possible moment. This stock is more or less rusty and getting worse all the time, stacked as it is in the warehouse—tins close together where the rust spreads easily.

"What you should do is to take it up to your place and what you are not going to use of it, either clean up or spread it out to a greater extent on the floor where the rust will not continue to spread as rapidly as it is at the present time.

"Now this is for your own good and you really ought to take some action at a very early date or you are going to meet with considerable loss.

"Very truly yours,
"GRAFTON JOHNSON."

To this letter the plaintiff replied as follows:

"October 15th, 1915.

"GRAFTON JOHNSON,
"Greenwood, Ind.

"*Dear Sir:* We are in receipt of your favor of the 13th and note the results of your visit to the Tipton factory, and the inspection of the number ten tins of pulp.

"We would certainly recommend that you give these the proper care so they will not rust. We should think that this would be to your own interest, in view of the fact that we undoubtedly wish to return the cans as per our contract with you. We would certainly recommend that you sort this pile over and any cans that look to you to be rusty and would be liable not to keep long, that you ship us in the car which we have just ordered from you.

"Very truly yours,
"THOMAS CANNING COMPANY,
"W. S. THOMAS."

Further correspondence followed, the defendant insisting that delivery under the contract had been made and that the risk of the cans rusting was on plaintiff, while plaintiff contended that until the cans were received by it the loss on account thereof must be borne

by defendant. Extracts from these letters will be hereafter referred to.

"Following the letter of October 13th from the defendant to the plaintiff, above set out, the plaintiff did nothing in the way of caring for said property or to prevent further rusting of said cans except to take out one car load, but allowed all of the remainder of said pulp to remain in said warehouse as before, until the latter part of November, during which time the damage to said containers by reason of said rusting greatly increased, and affected and damaged a large number of said containers which were not damaged at the time said notice was given on October 13th.

"By the first day of December, 1915, the plaintiff removed said entire lot of pulp from said warehouse and shipped the same to its plant at Grand Rapids. Plaintiff caused said cans to be opened, washed and sterilized as required by said contract."

In December plaintiff shipped a car load (about 1,000 dozen) of the empty containers to defendant, who caused them to be inspected by competent persons, and all were found "rusty and unfit for use again for any purpose, and were of no value whatever except as junk." The defendant refused to accept them, and so notified plaintiff. No further shipment of cans was made or offered to be made.

"Plaintiff realized from the sale of the cans retained by it the sum of $282.30, and plaintiff claims that it is entitled, on the foregoing facts, to judgment against the defendant in the sum of $5,760 less the amount thus realized, with interest at 5% from January 16, 1916.

"The plaintiff is indebted to the defendant in the sum of $710.47, with interest at six per cent. per annum from December 15, 1915, being the balance due on one of the $2,500 notes given pursuant to the contract in question."

The case came on for trial before the circuit judge without a jury, and after the conclusion of the arguments of counsel on the facts as stated in the stipula-

tion '"the court suggested that possibly the stipulated statement of facts lacked certain facts essential to plaintiff's recovery," and later such testimony was offered. To this, defendant objected "on the ground that the stipulated facts heretofore entered into embody all the facts in the case, and make it incompetent for the plaintiff to present any further testimony." The court permitted plaintiff to put in testimony to show that after the cans had been emptied by plaintiff and were ready for shipment back they were in the same condition as when received by plaintiff. The defendant's attorney was given opportunity to offer any testimony he desired at the conclusion of that put in by plaintiff, but announced that he had none to offer. The plaintiff recovered a judgment for $5,651.14.

1. Was such testimony admissible? We agree with counsel for defendant that the stipulation is equivalent to a finding of facts by the court or the special verdict of a jury in its binding force upon the parties thereto. *Goodrich* v. *City of Detroit,* 12 Mich. 279; *Gillett* v. *Board of Trade,* 46 Mich. 309; *Cofrode* v. *Wayne Circuit Judge,* 79 Mich. 332 (7 L. R. A. 511). But when it appeared on the argument that the plaintiff had omitted to include therein a fact upon which its right of recovery depended and which in no way tended to modify or change any fact so agreed upon between the parties, we believe it was well within the discretion of the trial judge to permit proof of such fact to be received. We can see no distinction in principle between the granting of such a request in this case and in one where, after the proofs are closed, the case is reopened to permit an omitted fact to be established. That the trial court has such discretion has been many times held by this court. *Thompson* v. *Ellsworth,* 39 Mich. 719; *Gray* v. *Willcox,* 56 Mich. 58; *Minkley* v. *Township of Springwells,* 113 Mich. 347.

2. Construction of the contract. Exception was taken to the following finding of the trial judge:

"I find and conclude, as a matter of law, that the word 'received' in the contract between the parties of January 12, 1915, meant the time when the goods were received at the factory or the warehouse of the plaintiff in Grand Rapids, Michigan."

Defendant's counsel insist that the title to the pulp, including the containers, "passed to the plaintiff at the time the contract was made, or at least at the time of the issuance and acceptance of the warehouse receipt," and cite many authorities to support such claim. In our opinion the rights of the parties are in no way dependent upon when the title to the pulp or the containers passed to the plaintiff. Ownership of property may be in one person and possession of it in another. In the contract the defendant agreed to repurchase the empty tins if returned to him "in as good condition as when received by buyer." When were these cans received by the plaintiff? While the meaning of the word "received" in such contracts is ordinarily understood to be "delivered into the possession of," we are of the opinion that the entire contract must be scrutinized to ascertain what the parties hereto intended it to mean. The defendant agreed to store the product sold free of charge until ordered shipped by the plaintiff, subject to the limitation that it should all be shipped by December 1, 1915. This undertaking on his part must be considered as a part of the consideration moving to plaintiff in the making of the contract. The containers were thus to be left in defendant's possession and under his care and control under his agreement to store them until shipment was ordered by plaintiff. It may well be inferred that no thought of damage by rust owing to weather conditions entered the mind of either at the time the contract was made. We are impressed that the duty

rested on the defendant to see to it that they were so stored and cared for pending shipment as to reach the plaintiff in a condition that if cleaned, dried and sealed by it in the manner set forth in the stipulation they would be repurchased by defendant at the price agreed upon. Our attention is called by plaintiff's attorney to the fact that the product was guaranteed "against leaks and swells, until the pulp is received." The word "received" here clearly means delivered by the defendant to plaintiff from the storage in which he had placed the cans. This but confirms the conclusion reached that the rusting of the containers was a risk assumed by the defendant until the cans were in the actual possession of the plaintiff.

3. It is insisted by defendant that the failure of the plaintiff to offer to return the tins to defendant bars its right of recovery. On October 14th defendant had written plaintiff that—

"On account of the tins being in this rusty condition at this time we wish to go on record in advising you that we cannot accept the return of these tins as was contemplated when the purchase was made,"—

and on October 20th defendant again writes—

"Although we have taken the best possible care of them, they have rusted very seriously, as we have heretofore written you, and consequently are not in a merchantable condition."

The tins were at that time in the warehouse at Tipton and presumably had been inspected by the defendant. Notwithstanding this positive notice that defendant would not accept a return of the containers, plaintiff shipped him a car load when emptied, all of which were rejected "for the reason that the cans returned do not comply with our contract to repurchase same," and the plaintiff was asked to "give the railroad company instructions regarding the disposition of same." Under our construction of the contract, it

was the duty of the defendant to have accepted the tins shipped. He did not do so, but left the burden on plaintiff to pay the freight on them and dispose of them as best it could. We think such refusal, when considered in connection with the letters above quoted from, advising plaintiff that defendant would not accept a return of the tins, absolved plaintiff from making further shipments. It was not required to incur expense and render itself liable for freight in attempting further performance, nor was it under obligation to assume that defendant might probably change his mind about it.

In *Roehm* v. *Horst*, 178 U. S. 1 (20 Sup. Ct. 780), in which the facts were somewhat similar, the English and American decisions are reviewed at length and the rule announced as above stated. The following language of Mr. Justice Brewer in *Anvil Mining Co.* v. *Humble*, 153 U. S. 540 (14 Sup. Ct. 876), is quoted with approval:

"Whenever one party thereto is guilty of such a breach as is here attributed to the defendant, the other party is at liberty to treat the contract as broken and desist from any further effort on his part to perform; in other words, he may abandon it, and recover as damages the profits which he would have received through full performance. Such an abandonment is not technically a rescission of the contract, but is merely an acceptance of the situation which the wrongdoing of the other party has brought about."

In *Wigent* v. *Marrs*, 130 Mich. 609, a similar question was presented to this court. The syllabus reads:

"A party to an executory contract may always stop performance by the other party by an explicit direction, but renders himself liable for such damages as the other has sustained by reason of having the performance stopped."

It contains the following quotation from 2 Mechem on Sales, § 1091:

"The law is well settled that a party to an executory contract may always stop performance on the other side by an explicit direction to that effect, though he thereby subjects himself to the payment of such damages as will compensate the other for the loss he has sustained by reason of having his performance checked at that stage in its progress."

"The contract is not rescinded, but broken; and, while the other party has the right to deem it in force for the purpose of the recovery of his damages, he is under no obligations, for that purpose, to tender complete performance, nor has he the right to unnecessarily enhance the damages by proceeding after the countermand, to finish his undertaking." *Id.* § 1092.

4. Was the finding that the cans when emptied and ready for shipment to defendant were in the same condition as when received by plaintiff supported by the proofs? Adrian E. Heyboer, an employee of plaintiff, testified that he saw all of the cans after they were emptied and that they were in the same condition so far as rust was concerned as when received by plaintiff.

What has been said disposes of the questions raised and discussed by defendant's counsel in their brief. We have, however, examined the other errors assigned and find them without merit.

The judgment is affirmed.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, STONE, CLARK, and BIRD, JJ., concurred.