QUIGLEY v. GRAND TRUNK WESTERN RAILWAY CO.

1. RAILROADS—BRIDGES—DUTY TO MAINTAIN.
   A railway company is bound to keep the road and the bridge over its tracks in a reasonably safe condition for travel.[1]

2. SAME — BARRIERS AT EMBANKMENT ON APPROACH TO BRIDGE— DUTY OF RAILWAY COMPANY TO ERECT BARRIERS.
   While a railway company is bound to erect a fence or barrier at the turn of the road on the approach to a bridge over its tracks to warn travelers of the danger, it is not bound to erect a barrier that would withstand the impact of an automobile.[2]

3. SAME—NEGLIGENCE OF AUTOMOBILE DRIVER—DIRECTED VERDICT.
   In an action against a railway company by a passenger in an automobile for personal injuries received when the automobile went down an embankment after going through a railing on an approach to a bridge over its tracks, evidence held, sufficient to justify a directed verdict in favor of defendant on the ground of the negligence of the driver, especially in view of Act No. 368, Pub. Acts 1921, § 21, requiring the driver of a motor vehicle under such circumstances to have it under control.[3]

[1]Railroads, 33 Cyc. pp. 927, 930; [2]Id., 33 Cyc. p. 931 (Anno); [3]Id., 33 Cyc. p. 1099.

Error to Genesee; Black (Edward D.), J.    Submitted January 22, 1926.    (Docket No. 61.)    Decided March 20, 1926.

Case by Justus Quigley against the Grand Trunk Western Railway Company for personal injuries. Judgment for defendant on a directed verdict.    Plaintiff brings error.    Affirmed.

*Roy E. Brownell* and *Charles A. Withey,* for appellant.

*W. A. Geer,* for appellee.

SNOW, J.    Plaintiff was injured by an automobile in which he was riding going over the embankment of the approach to a bridge over the tracks of the defendant railway company, at a point in the main highway between Flint and Lapeer, about three miles west of said last named city.    He was riding in the front seat with his father-in-law, William Whiteside, who was driving a Buick K-45 automobile, with the top up and without side curtains.    Their wives were in the rear seat.    Mr. Whiteside had never been over this road before, but on looking down the road going east could see the bridge a quarter of a mile away. At this distance from the bridge he was going about 25 miles an hour, and when about 20 rods back from the bridge passed a sign reading "Dangerous Curve." Approaching the bridge from the west the highway runs almost directly east.    At this point the Grand Trunk tracks run a little south of east and intersect the highway at the bridge in question.    Going east the highway turns to the left over the bridge at an angle less than a right angle, and after turning upon the bridge one must turn still farther to the left to avoid striking the east side of the bridge.    There is a grade in the highway approaching the overhead bridge and the turn is at the top of this hill, where

there was a fence at the end of the highway which was the east rail of the bridge extended.

Plaintiff claims that as the car in which he was riding approached the bridge it was being driven about 8 or 10 miles an hour, and as its driver made the turn, another car, coming from the other direction, had stopped on the opposite end of the bridge; that the right front hub cap of plaintiff's car came in contact with the rail of the fence on the east side of the bridge which ran parallel with and in the same direction as the automobile in attempting to pass over the bridge.      As the hub cap hit the fence the steering wheel was jerked from the hands of the driver; the car was turned to the right and sidewise against the fence which, being in a decayed condition, did not support it, but gave way, and the car and its occupants went down the embankment, and plaintiff received his injury.

Mr. Whiteside, the driver of the car, testified:

"As I was coming up to the bridge I slowed right down to about 8 or 9 miles an hour.      I saw the other car on the other side approaching the bridge.      I did not know who was going to make it first, and I said to myself 'I got to hold right down,' and I did, and I crowded the side a little too much.      If the bridge had been square it would have been all right, but the bridge comes back a little too much.      That is what deceived me, the bridge and the narrowness of the approach got me.      The other car stopped right on the approach of the bridge."

On cross-examination this witness testified:

"I would say that it would be 15 or 20 rods from the bridge that I reduced my speed from 18 to 20 miles an hour down to 8 or 9.      I held my car right down. I said to my folks, 'Now, this is a bridge and I got to look out for it.'      I had my foot on the brake and I seen I was not going to make the bridge.      I took my foot off.      That is the last of it.      I see I was going too slow.      I speeded up for a few minutes.      There

were some cars ahead of me and there was some dust. The dust did not bother me. I seen the bridge and I knew I was coming to a bridge."

The fence referred to at the turn at the end of the road on the approach to the bridge was in effect a guard rail, placed there to warn travelers of the turn in the road. Plaintiff claims it was defective and was rotted and decayed in portions and would not support the weight of the automobile which was driven against it. There was a dispute in the testimony as to the condition of the fence, but it is conceded that at the time of the accident it was standing in proper place and position as a guide and warning to travelers, and that it was plainly seen by the driver of the automobile in which plaintiff was riding. The defendant insists that no negligence on its part was shown, and that the cause of the accident was the negligence of the driver of the car which undisputedly is imputed under the circumstances to the plaintiff. This view of the case was taken by the trial judge, who, after he had submitted the case to the jury, recalled them and directed a verdict in favor of the defendant, from which verdict plaintiff appeals.

The defendant is responsible for the condition of the road and the bridge over its tracks, and it is bound to keep them in a reasonably safe condition for travel. It was bound in this instance to erect a fence or barrier at the turn of the road on the approach to the bridge to warn travelers along the highway of its dangers, but it was not bound to erect a barrier that would withstand the impact of an automobile. *Gerrie v. City of Port Huron*, 226 Mich. 630; Babbitt, Law of Motor Vehicles (3d Ed.), § 414; *Long v. Township of Weare*, 195 Mich. 706. If such barriers were required to stop automobiles, driven at a high rate or low rate of speed, nothing short of a concrete wall would suffice. Such a barrier is not necessary, and

plaintiff cannot complain that the fence would not support the automobile which was driven against it.

Counsel for plaintiff assert that the leading case in Michigan which is authority for submission of the instant case to the jury to determine as a question of fact the negligence of the defendant, is *Gage* v. *Railroad Co.*, 105 Mich. 335. In this case a single horse attached to a sleigh was being driven onto the approach of a bridge; it made a sudden shy to the right, stumbled and slipped and went over the embankment and injured plaintiff. There were no railings of any kind, and the question was left to the jury to determine whether such absence of railings constituted a defect in the road that would render defendant liable, and whether it was the proximate cause of the injury. In the instant case there was a barrier which was a guide and a warning to drivers of automobiles approaching the bridge from this direction. But counsel for plaintiff in their brief contend:

"In other words, the railing should have been of sufficient strength and resistance under these circumstances to have supported the car and prevented it from falling over the embankment."

And again in their brief counsel say:

"We do not contend that a railing should be strong enough to stop a car going at full speed straight into the railing, but we do submit that where the car of the plaintiff was on the east side of the bridge, due to the negligence of the defendant in maintaining a dangerous approach and narrow bridge, that under these circumstances they should maintain a rail strong enough to support a car being driven at a reasonable rate of speed and which finds itself by reason thereof thrown against said railing."

This cannot be laid down as a rule, but, as we have pointed out, there was no obligation upon the part of the defendant to construct this fence so rigidly as to

withstand the shock of an automobile driven against it, and it was not so intended.

Counsel for plaintiff also claim that *Minkley* v. *Township of Springwells,* 113 Mich. 347, is authority for sustaining their position in the instant case. In this case the highway was out of repair, in that the planks were loose and flew up and scared the horse which shied against the railing which gave way. There the roadbed, for which defendant was also responsible, was out of repair, and the court held the defendant liable if the jury found such in fact was its condition.

In the case at bar there was no defect in the traveled portion of the road. It was a gravel road over which there was much travel, in fact it was the main traveled highway between Flint and Lapeer. At the point where the accident occurred the road was 14 feet, 10 inches wide; there were no holes or other defects in it that caused the driver of the automobile to run against the fence. To get onto the bridge he had to make a rather short turn to the left. Signs along the road, one of which at least he observed, warned him of the curve. He says he realized he must make the turn as he approached it and mentioned the fact to those in the car with him. He failed to completely turn onto the bridge and ran against the fence. The injury was caused by the negligence of the driver rather than that of the defendant.

"Upon approaching an intersecting highway, a bridge, dam, sharp curve or steep descent, and also in traversing such intersecting highways, bridge, dam, curve or descent, a person operating a motor vehicle shall have it under control and operate it at such speed as is reasonable and proper, having regard to the traffic then on such highway and the safety of the public." Act No. 368, Pub. Acts 1921, § 21 (Comp. Laws Supp. 1922, § 4817).

While this statute is intended for the protection of

others, it also has application to the driver for his own safety.

The court was right in directing a verdict on the grounds that "there is no negligence shown by the testimony against the defendant, and that the plaintiff was guilty of contributory negligence."

Assignments of error as to the rejection of testimony offered by the plaintiff need not be discussed as its admission would not establish negligence on the part of defendant or want of contributory negligence on the part of the driver.

Judgment is affirmed.

BIRD, C. J., and SHARPE, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.