**INSURANCE COMPANY OF NORTH AMERICA, Plaintiff-Appellant,**

v.

**NORTHWESTERN NATIONAL INSURANCE CO., Defendant-Appellee.**

**No. 73–1897.**

United States Court of Appeals, Sixth Circuit.

Argued Feb. 14, 1974.

Decided April 11, 1974.

G. Cameron Buchanan, Alexander, Buchanan & Seavitt, Detroit, Mich., on brief, for plaintiff-appellant.

Harold F. Klute, Klute, Stone & Campbell, Niles, Mich., on brief, for defendant-appellee.

Before PHILLIPS, Chief Judge, and LIVELY and ENGEL, Circuit Judges.

ENGEL, Circuit Judge.

This is an action between two liability insurance carriers, Insurance Company of North America and Northwestern National Insurance Company, to determine which of them is obligated to extend liability coverage for damages to a crane.

In the construction of a multi-story parking facility in Ann Arbor, Michigan, Precast Schokbeton, Inc., now known as Cork Street, subcontracted with the principal contractor, Jeffress-Dyer, Inc., to furnish and install complete precast concrete work as specified in a written contract. To perform its work, Cork Street required the use of a crane which, with operator, was furnished by L. W. Connelly and Sons, Inc. at an agreed hourly charge.

On May 19, 1966, after work hours, the crane was severely damaged when it was struck by concrete pillars which had previously been erected by Cork Street. The loss sustained, originally stipulated at $100,000 triggered a lawsuit in the Wayne County, Michigan Circuit Court against Cork Street and others by Connelly's property damage insurance carrier.

The instant action was brought in the United States District Court for the Eastern District of Michigan to determine, as between two liability insurance carriers, which was bound to defend Cork Street in the state action and to pay any judgment awarded against it based on the damage to the crane.

Both Insurance Company of North America and Northwestern National Insurance had, through the same agency, issued liability insurance policies to Cork Street. The loss occurred during the coverage period of each policy. The dispute between the two liability insurers, turned upon whether at the time of the damage, the crane had been "rented" by Connelly to Cork Street as the term was used in the respective policies.[1]

In a carefully written opinion, reported at 371 F.Supp. 550, the District

---

[1]. The INA policy extended property damage coverage to Cork Street, but excluded "injury to or destruction of (1) property owned or occupied by or rented to the insured . . . ." The Northwestern policy, on the other hand, appears to have been written with a view toward covering the risk excluded in the INA policy for it provided in a "Contractor's Equipment Floater" that "this policy covers the legal and/or assumed liability of the assured in respect of loss or damage to rented items of contractors' equipment belonging to others. . . . "

Court held upon the facts presented, that under applicable Michigan law the crane was not "rented" at the time of the loss and accordingly rendered judgment against INA and in favor of Northwestern for the agreed amount of loss which had been suffered by the latter.

We conclude that the judgment in favor of defendant-appellee should be affirmed for the reasons stated in the trial court's opinion, *supra*, unless it erred in considering evidence outside the scope of the written stipulation of facts entered into between the parties. This constitutes, in our judgment, the only issue meriting treatment beyond that already afforded by the court below.

To protect themselves and Cork Street in the state action, INA and Northwestern joined to provide Cork Street's defense. Later, while this action was pending, the state action was compromised and settled, the two insurance companies splitting the $60,000 agreed settlement figure and costs of defense, with ultimate responsibility for the whole to await the District Court's decision on the coverage issue.

On June 28, 1971, INA and Northwestern filed in the court below a stipulation of facts incorporating therein, applicable portions of their respective insurance policies and a copy of the contract between Jeffress-Dyer and Cork Street and also a copy of a memo or form described thereon as "rental contract" which was used each day between Cork Street and Connelly to disclose the hours the Connelly crane was in operation.

The stipulation provided in part:

"It is hereby stipulated by and between the parties by their respective counsel that this Honorable Court may accept the Statement of Facts, binding on each of the parties and on the basis of the same a decision may be made and a Judgment entered thereon —determining which insurer was the insurer covering the damaged property at the time of the loss and liable for damages, . . . . ."

. Relying upon the stipulation as filed, INA thereupon moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, claiming "that there existed no genuine issues of material fact, but rather, only legal questions remain for determination by this court."

INA's motion was met by Northwestern's claim that, the stipulation notwithstanding, there were in addition to the facts agreed upon, at least four further factual issues in dispute requiring resolution before a decision on the merits could be reached. Northwestern's response to the motion was accompanied by the affidavit of one of its attorneys, the purport of which was to claim that defendant in executing the stipulation never intended it to limit the right of either party to submit proofs and arguments relative to ultimate issues not alluded to in the stipulation.

In arguments before the District Court, INA vigorously contended that the stipulation was by its own terms all-inclusive. Further, it claimed that its agreement to participate in the compromises of the state action was premised upon the fact that the District Court's decision on the coverage issue would be limited to consideration of the policies involved and the facts contained in the stipulation, thus allowing the entire dispute to be resolved without the expense of further litigation.

While INA made a strong case before the District Court, as it acknowledged, the existence of an understanding that the stipulation was all-inclusive was not so clear as INA urged.

In addition to the sworn affidavits of Northwestern's counsel, counsel for INA acknowledged that, at the time the stipulation was being prepared and before it was signed, co-counsel for Northwestern had indicated that there were still additional questions to be resolved. In a letter dated May 26, 1971, addressed to INA counsel, he stated in part:

"While you and Mr. Weintraub have agreed on a stipulated statement of facts, a decision on the issue of 'care, custody and control' must of necessity

turn largely on the court's interpretation of the use arrangement between Connelly and Precast Schokbeton. Accordingly, I am wondering to what extent we should agree to limit ourselves as to the facts to be adduced and the argument thereof. Perhaps, we could better resolve these questions by telephone conference or meeting between the two of us. I will await your call in this regard."

Faced with the foregoing and other equally ambiguous and contradictory representations of counsel, the trial court denied INA's summary judgment motion without prejudice, observing:

"I don't know what happened, I can't tell. And the only grounds that I think that I should consider here, in fairness to the parties involved, I think that in order for this Court to make a fair determination, it should have all available facts.

"I recognize, at the same time, that there may have been some reliance to the detriment of I.N.A. here, and perhaps that can be made an issue one way or another by the way of damages or some other consideration.

"But I don't think that fairness would permit me to decide this matter on the basis of the stipulation alone when it is obvious that other facts could and should be presented to the Court."

Subsequently, additional proofs were taken in the form of two depositions, INA participating therein but not abandoning its claim that the stipulation forbade their use.

In that posture, the case was deemed submitted to the court for final decision on the merits. In its opinion, the District Court found that "the stipulation by itself presents insufficient facts for the court to decide this controversy", and proceeded to consider both the stipulation and the additional proofs. On that basis, the court decided the case adversely to INA.

■ To the extent that the trial court determined upon the facts before it that Northwestern had not waived its right to submit additional proofs, we hold that finding to be not clearly erroneous. Rule 52(a) Federal Rules of Civil Procedure.

■ To the extent that the trial court exercised its discretion in order to obtain the additional proof it considered essential to a just adjudication of the controversy, we hold that its discretion was not abused.

It is difficult indeed to conceive that in entering into the stipulation, Northwestern was agreeing to stipulate away the only issue in dispute, that of whether the transaction between Connelly and Cork Street amounted to a rental of the crane. The situation here is not unlike that in Old Colony Trust Associates v. Hassett, 150 F.2d 179 (1st Cir. 1945), in which it was held that a stipulation by the government that a certain transaction was a loan in form did not preclude its argument, albeit unsuccessfully, that it was in substance a sale.

■ We are in accord with the numerous cited authorities in Michigan and elsewhere concerning the binding effect of stipulations entered into by parties to litigation, and the limitations upon the parties and the court in enlarging the facts beyond those stipulated. 50 Am.Jur., Stipulations, § 9. Feniger v. American Railway Express Co., 226 Mich. 106, 197 N.W. 550 (1924); In re Moore's Estate, 310 Mich. 206, 16 N.W.2d 720 (1974); United States v. Sinor, 238 F.2d 271 (5th Cir. 1956). See also Hackfield & Co. v. United States, 197 U.S. 442, 447, 25 S.Ct. 456, 49 L.Ed. 826 (1905). It is one matter, however, to bind oneself to an admission of the truth of certain undisputed facts and quite another to agree that the facts so agreed to well constitute all of the evidence in the case. Such an understanding, limiting as it does the very basic right to a fair and full trial on the merits, should be enforced only when the in-

tent to do so appears in the clearest form. This is particularly true where, as here, the trial judge on his own, determined the stipulated facts too meager for a proper resolution of the issues presented.

■ Economy of the time of both litigants and courts is greatly favored, and no more useful device is found than the stipulation which agrees to the existence of material and relevant facts concerning which there is no dispute, thus avoiding time-consuming and unnecessary presentation of proof. See Rules 1 and 16, Federal Rules of Civil Procedure. As such, the stipulation is to be encouraged as an efficient means of presenting evidence, but not necessarily as a vehicle for suppressing it.

We note here, as did the trial judge, that the facts in the stipulation were largely bare-bones and that the additional proof did not contradict the agreed facts but added flesh and life to them, and in so doing presented an understandable controversy to which the judge could apply the law and his appropriate judicial fact-finding function in a bench trial.

This principle was recognized by the Ninth Circuit in Southern California Freight Lines v. Davis et al., 167 F.2d 708, 710 (9th Cir. 1948), where the court stated:

"Appellant contends the trial court was confined to the four corners of the stipulation as to the evidence it could receive and consider. We do not agree. The stipulation relieved the parties from proving the facts therein set forth. The admission into evidence of additional material and relevant facts was proper for a full understanding of the issues and the clarification of the terms used in the stipulation."

Michigan has taken a similar view. In Thomas Canning Co. v. Johnson, 212 Mich. 243, 180 N.W. 391 (1920), the Michigan Supreme Court stated:

". . . when it appeared on the argument that plaintiff had omitted to include therein [in the stipulation] a fact upon which its right of recovery depended, and which in no way tended to modify or change any fact so agreed upon between the parties, we believe it was well within the discretion of the trial judge to permit proof of such fact to be received. We can see no distinction in principle between the granting of such a request in this case and in one where, after the proofs are closed, the case is reopened to permit an omitted fact to be established. That the trial court has such discretion has been many times held by this court." 212 Mich. at 249, 180 N.W. at 393.

Appellant does not claim that it was in any way precluded from presenting any further proof of its own, or that it even had any. While preserving its objection to the taking of additional proof, the appellant was permitted to participate fully in the process. Appellant does not claim the parties were denied a fair trial. On the contrary, it claims that, because of the stipulation, the trial judge was obligated to afford the parties something less. We cannot agree.

Affirmed.