CONGRESSHILLS APARTMENTS v TOWNSHIP OF YPSILANTI

Docket No. 47363. Submitted October 14, 1980, at Detroit.—Decided January 6, 1981.

Petitioner, Congresshills Apartments, a limited partnership, and respondent, Township of Ypsilanti, entered into an agreement on August 29, 1974, whereby they stipulated to an assessment of petitioner's property of $1,573,860 for the tax years 1974, 1975, and 1976. On September 30, 1974, the Tax Commission entered an order enforcing the parties' stipulation. The Tax Commission's jurisdiction over assessment controversies was transferred to the Tax Tribunal. The Commission's authority to hear new cases ended on August 31, 1974, and its authority to reach a decision as to those pending cases which did not require a hearing ended on September 30, 1974. Petitioner sought review of its property assessments for the years 1975 through 1979 before the Tax Tribunal. The Tribunal, on respondent's motion, dismissed petitioner's appeal for the tax years 1975 and 1976, pursuant to the stipulation previously entered into. The Tribunal also entered an order denying a reduction in the assessments for 1977 and 1979 and increased the 1978 assessment, resulting in petitioner's liability for an additional $15,000 in taxes. Petitioner appeals from the order of the Tax Tribunal, contending that the order of the Tax Commission enforcing the stipulation was invalid because no hearing had been held on the matter prior to August 31, 1974,

REFERENCES FOR POINTS IN HEADNOTES

[1] 73 Am Jur 2d, Stipulations § 1.
[2] 2 Am Jur 2d, Administrative Law § 397.
[3, 4] 72 Am Jur 2d, State and Local Taxation §§ 787, 818-820.
[4] 73 Am Jur 2d, Stipulations §§ 13, 14.
[5] 73 Am Jur 2d, Stipulations § 8.
[6] 72 Am Jur 2d, State and Local Taxation § 787.
[7-9] 71 Am Jur 2d, State and Local Taxation § 125.
[8, 9, 11] 72 Am Jur 2d, State and Local Taxation § 759.
[9, 10, 12] 72 Am Jur 2d, State and Local Taxation § 761.
Income or rental value as factor in evaluation of real property for purposes of taxation. 96 ALR2d 666.

and that, therefore, the Commission was without jurisdiction to enter the order. Petitioner also argues that, regardless of the validity of the order, petitioner had a statutory right to a hearing to establish that the property was not worth as much in 1975 and 1976 as was stipulated to. Further, petitioner argues that the Tax Tribunal's determination of the assessments for the tax years 1977, 1978, and 1979 were improperly based upon hypothetical market rents and income projections. *Held:*

1. The effect of the stipulation entered into was the same as if the valuation of the property had been fully litigated and adjudicated in a hearing before the Commission. The stipulation was in lieu of a hearing and had the same force as a hearing determination would have had. The stipulation was entered into prior to August 31, 1974, and the Tax Commission therefore had the authority to enter a valid order setting the valuation for the years 1974, 1975, and 1976.

2. In appropriate cases, the Tax Tribunal may review an assessment which was originally determined by the Tax Commission and "frozen" for three years. However, a case in which the valuation is determined by a mutual agreement concerning the fair property assessment, an agreement which, in essence, is a stipulation of facts relative to the value of the property upon which a consent judgment was predicated, is not an appropriate case for review.

3. For purposes of taxation, property must be assessed in accordance with its true cash value, and actual income must be considered as one factor in determining true cash value. The Tax Tribunal committed an error of law by basing its determination of true cash value for the years 1977 through 1979 on hypothetical rental rates which the petitioner could not legally obtain due to Federal regulations limiting the amounts of rents petitioner could charge for the apartments. The Tribunal must also consider actual expenses, not market averages, in reaching a determination of fair market values.

Affirmed in part, reversed in part, and remanded.

1. WORDS AND PHRASES — STIPULATIONS.

The purpose of a stipulation is the expeditious and amicable resolution of an adjudication.

2. WORDS AND PHRASES — HEARING.

A "hearing" is a judicial examination of the issues between the parties, whether of law or fact.

3. Taxation — Assessments — Tax Tribunal — Review of Tax Commission Assessments.

  The Tax Tribunal may, in appropriate cases, review an assessment which was originally determined by the Tax Commission and "frozen" for three years.

4. Taxation — Assessments — Stipulations — Review by Tax Tribunal.

  A tax assessment based upon a stipulation between the taxing authority and the taxpayer as to the value of the property involved and accepted and enforced by a valid order of the Tax Commission is not an appropriate case for review by the Tax Tribunal as being unfair due to changed circumstances during the period stipulated to.

5. Taxation — Stipulations — Binding Effect of Stipulations.

  Stipulations of facts relative to the value of property for purposes of taxation are binding on the parties involved.

6. Taxation — Tax Tribunal — Valuation — Appeal — Scope of Review.

  The authority of the Court of Appeals to review valuation decisions of the Tax Tribunal is limited to whether the Tribunal committed an error of law or adopted an incorrect principle.

7. Taxation — Assessments — True Cash Value — Constitutional Law.

  Property must be assessed in accordance with its true cash value for purposes of taxation (Const 1963, art 9, § 3).

8. Words and Phrases — True Cash Value — Fair Market Value.
  "Fair market value" is synonymous with "true cash value".

9. Taxation — True Cash Value — Actual Income — Hypothetical Rental Income.

  Actual income must be considered as one factor in determining true cash value of property for purposes of taxation; hypothetical rental income not demonstrably related to fair market value may not be considered.

10. Taxation — Assessments — Economic Income — Actual Income — Statutes.

  A tax assessor is required by statute to consider the "present economic income" of the property being assessed; "present economic income" means actual income (MCL 211.27[1]; MSA 7.27[1]).

11. TAXATION — TAX TRIBUNAL — TRUE CASH VALUE — ACTUAL
        INCOME — ACTUAL EXPENSES.
    The Tax Tribunal must consider actual expenses, not market
    averages, in reaching a determination of fair market value.

12. TAXATION — COMMERCIAL PROPERTY — VALUATION — ACTUAL
        INCOME.
    Actual income from commercial property must be considered for
    purposes of taxation in all cases in which valuation of such
    property is at issue.

*Hyman, Gurwin, Nachman, Friedman & Winkelman* (by *Thomas J. Beale*), for plaintiff.

*Collins & McCormick,* for defendant on appeal.

Before: BRONSON, P.J., and D. E. HOLBROOK, JR., and R. M. RANSOM,* JJ.

BRONSON, P.J. Petitioner-appellant (hereinafter petitioner) seeks review of its property tax assessments for the years 1975 through 1979.

Petitioner initially disputed its property assessment in 1974. On August 29, 1974, the township assessor for Ypsilanti Township and the agent for Congresshills Apartments, a limited partnership, entered into an agreement whereby they stipulated to an assessment of $1,573,860 for the tax years 1974, 1975, and 1976 based on a true cash value of $3,400,000 and a state equalized value of $1,700,000.

At the time the dispute originally arose, the Michigan Tax Commission had jurisdiction over assessment controversies. On August 31, 1974, the Commission was divested of its authority to hear any new cases. MCL 205.771(a); MSA 7.650(71)(a). However, the Commission retained jurisdiction over any matter heard on or before August 31, 1974, until September 30, 1974. MCL 205.771(b);

---

* Circuit judge, sitting on the Court of Appeals by assignment.

MSA 7.650(71)(b). On September 30, 1974, the Commission entered an order enforcing the parties' stipulation.

On May 25, 1979, petitioner sought review of its property assessments for the years 1975 through 1979 before the Michigan Tax Tribunal. On respondent's motion, however, the Tax Tribunal dismissed petitioner's appeal for the tax years 1975 and 1976. On September 14, 1979, the Tax Tribunal entered an order denying a reduction in the assessments for 1977 and 1979, which were $1,366,000 and $1,900,000 respectively. Furthermore, the Tribunal increased the 1978 assessment of the apartment complex to $1,750,000, resulting in petitioner's liability for an additional $15,000 in taxes.

Petitioner now appeals as of right. Additional facts will be detailed where relevant to specific issues.

I

Due to the stipulation entered into between the parties for the tax years 1975 and 1976, petitioner is only entitled to relief for these years if the order entered pursuant to the stipulation was invalid. Petitioner contends that the Tax Commission order of September 30, 1974, was invalid because the matter had not been "heard" by August 31, 1974, within the meaning of MCL 205.771(a); MSA 7.650(71)(a). If petitioner is correct, the Tax Tribunal did not have jurisdiction to enter the order in dispute.

We think the Tax Tribunal resolved this issue succinctly and correctly when it wrote in its opinion on this matter:

"Clearly, the legislative intent was to limit the amount of cases heard by the STC but decided by the Tribunal. To this end, the statute provided for an early transfer of cases not yet heard by the STC (August 31, 1974), and then also provided an additional 30 days during which the STC would have an opportunity to reach a decision as to those pending cases which did not require hearing.

"The stipulation was duly entered into between the parties through their authorized representatives prior to August 31, 1974. The matter was ready for decision by the STC by August 31, 1974 and we believe that the effect of the stipulation was the same as if it had been ready for decision based on a hearing. This Tribunal considers the stipulation to be in lieu of a hearing and thus falling within the purview of MCL 205.771(b); MSA 7.650(71)."

Additionally, we note that MCL 205.771; MSA 7.650(71), became effective on July 1, 1974. Were we to accept the petitioner's argument, we would have to conclude that no valid order based on the parties' stipulation could be entered by the Tax Commission for the months of July and August, 1974, unless a hearing was conducted also. To require a formal hearing where the parties have agreed to a particular resolution of a dispute defeats the very purpose of a stipulation, that is: the expeditious and amicable resolution of an adjudication. Moreover, to require a formal hearing in such circumstances would constitute a gross waste of the Tax Commission's resources and the taxpayers' monies.

This Court has defined a hearing as a "judicial examination of the issues between the parties, whether of law or fact". *Michigan Consolidated Gas Co v Muzeck,* 15 Mich App 193, 196; 166 NW2d 273 (1968). If the "hearing" that petitioner believes it was due constitutes a mere *pro forma*

acceptance of the parties' stipulation, it would be no true hearing at all as no independent review of the law or facts by the quasi-judicial tribunal would occur. If the "hearing" embodies a full adjudication including the taking of testimony, it would merely prolong litigation and divest the parties of their right to settle their dispute on mutually agreeable terms. See, *Conel Development, Inc v River Rouge Savings Bank,* 84 Mich App 415, 419, fn 5; 269 NW2d 621 (1978), *lv den* 406 Mich 910 (1979).

II

Petitioner next argues that, even assuming the order entered by the Tax Commission was effective, it had a right to a hearing to establish that the property was not worth as much in 1975 and 1976 as the stipulated value. Petitioner relies on the following portion of MCL 211.152(3); MSA 7.210(3), for its position that it is entitled to a review of its assessed valuation for 1975 and 1976:

"When the assessment of any property has been reviewed by the commission as herein authorized, such assessment shall not be changed for a period of 3 years without the written consent of the commission."

We do not disagree with petitioner's assertion that, in appropriate cases, the Tax Tribunal may review an assessment which was originally determined by the Tax Commission and "frozen" for three years. We do, however, disagree that this case represents a situation in which such review is appropriate.

The assessed valuations given petitioner in this case were not the result of a fully litigated dispute. This is not a case in which the parties vigorously

disagreed on the proper assessment and presented their conflicting theories before the State Tax Commission. In such a case, it cannot be said that either party really agreed to the assessment ultimately rendered by the Tax Commission. As such, if either party believed that the Tax Commission's assessment became unfair during the period of the "freeze" due to changed circumstances, MCL 211.152(3); MSA 7.210(3) provided a means for rectifying the problem.

Petitioner, however, would have us hold that MCL 211.152(3); MSA 7.210(3) was also intended to apply where the parties come to a mutual agreement concerning the fair property assessment. In effect, the agreement here was a stipulation of facts relative to the value of the property upon which a consent judgment was predicated. Such stipulations are binding on the parties. *Thomas Canning Co v Johnson,* 212 Mich 243, 249; 180 NW 391 (1920), *Wechsler v Zen,* 2 Mich App 438, 441; 140 NW2d 581 (1966), *Shahan v Shahan,* 74 Mich App 621, 623; 254 NW2d 596 (1977).

### III

Petitioner also argues that the Tax Tribunal's determination of the assessments for the tax years 1977, 1978, and 1979 are improperly based upon hypothetical market rents and income projections. The record reveals that the subject property was financed, built, and operated pursuant to a United States Department of Housing and Urban Development (HUD) program designed to make quality housing available to low-income families. A HUD regulatory agreement limits the amount of rents which may be charged for the apartments, and these rents are substantially below market levels for comparable housing. The mortgage on the

property has a "lock-in" provision which mandates that the mortgage—and the limitation on the rate of rentals—cannot be discharged for a period of 20 years. Testimony shows that petitioner has a greater problem with payment delinquencies than similarly situated properties because of restrictions limiting rentals to persons with lower incomes.

While our authority to review the Tax Tribunal's valuation decision is limited, we must consider whether the Tribunal committed an error of law or adopted an incorrect principle. *Northwood Apartments v Royal Oak,* 98 Mich App 721; 296 NW2d 639 (1980), and cases cited therein.

For the purposes of taxation, property is to be assessed in accordance with its true cash value. Const 1963, art 9, § 3. Fair market value is synonymous with true cash value. *CAF Investment Co v State Tax Comm,* 392 Mich 442, 450; 221 NW2d 588 (1974). The Legislature has defined true cash value as:

" 'Cash value' means the usual selling price at the place where the property to which the term is applied is at the time of assessment, being the price which could be obtained for the property at private sale, and not at forced or auction sale." MCL 211.27(1); MSA 7.27(1).

In *CAF, supra,* 454-455, the Supreme Court concluded that the State Tax Commission was required to consider *actual income* as a factor in determining true cash value instead of hypothetical rental income not demonstrably related to fair market value. The property in *CAF* was subject to a long-term lease. At the time the lease agreement was entered into, the rental rate obtained was at the then prevailing market rate. However, circum-

stances had changed, making the property's rental value (and thus true cash value) much higher if it could be leased under current market conditions.

The *CAF* decision stands for the obvious and unremarkable proposition that a buyer will be unwilling to purchase a property based upon current rental rates available in the market where he is unable to enjoy these rates due to an existing lease. It is equally obvious that a potential purchaser will not pay the market rate for an apartment complex where, as here, current market rental rates cannot be obtained due to governmental restrictions. MCL 211.27(1); MSA 7.27(1) requires the assessor to consider the "present economic income" of the property. In *CAF, supra,* the Supreme Court held that "economic income" as used within the meaning of the statute means *actual income.* See, also, *Northwood Apartments, supra.* Other jurisdictions which have considered this issue have also come to the conclusion that Federal restrictions on rental income must be considered in determining the true cash value of a property. *Kargman v Jacobs,* — RI —; 411 A2d 1326 (1980), *Community Development Co of Gardner v Board of Assessors of Gardner,* — Mass —; 385 NE2d 1376 (1979), *Royal Gardens Co v City of Concord,* 114 NH 668; 328 A2d 123 (1974). In our opinion, the Tax Tribunal committed an error of law by basing its determination of true cash value for the years 1977 through 1979 on hypothetical rental rates which the petitioner could not legally obtain.

As was noted in *CAF, supra,* 455-456, the assessor is not required to solely limit its assessment decision based on actual rents received under the HUD restrictions. This is true whether the encumbrance to obtaining market income is due to a

long-term lease or Federal program restrictions. For instance, in this case the petitioner was restricted in the maximum rental rates it could charge for a 20-year period. The true cash value of the subject property is thus greater than that for a comparable property whose actual yearly income is identical to that of petitioner's, where these actual income figures truly reflect market conditions. As the remaining period of restricted rental rates declines, the price which a willing purchaser would pay for the apartment complex increases.[1]

As a corollary to our holding that the Tax Tribunal must use actual income figures in determining the true cash value of the property, we also hold that the Tribunal must consider actual expenses in reaching a determination of fair market value, and not market averages. Again, see *Northwood Apartments.*

Although in this case we are concerned with governmental restrictions imposed by HUD which affect rental rates and, thus, true cash value, actual income from commercial property must be considered in all cases in which valuation is in issue.

Affirmed in part, reversed in part, and remanded for recalculation of the true cash value for the tax years 1977 through 1979 in accordance with this opinion.

---

[1] This, of course, assumes that the rental rates in the market continue to be at levels in excess of the restricted rates allowed by HUD.