FIRST CITY CORPORATION v CITY OF LANSING

Docket No. 83224. Submitted February 4, 1986, at Lansing. Decided April 29, 1986.

The First City Corporation petitioned in the Michigan Tax Tribunal seeking a review of the assessment of petitioner's twenty-eight-unit apartment building by respondent, City of Lansing, for the 1982 and 1983 tax years. At the hearing on the petition, petitioner contended that respondent's assessment level exceeded fifty percent of the true cash value (TCV) because it failed to consider the building's present economic income. Petitioner contended that the TCV for the property was $290,-000. The tribunal found that the TCV was $421,600 for each year, the same TCV found by the respondent. Petitioner appeals from the tribunal's opinion and order to that effect. *Held:*

1. The Court of Appeals determined that the tribunal's failure to set forth the basis for its conclusions of law precluded the Court from determining whether the tribunal's decision was supported by competent, material and substantial evidence and was free of errors of law or the adoption of wrong principles. Such failure mandates a remand to the tribunal.

2. The tribunal's failure to make a finding as to the most appropriate method of valuation under the circumstances mandates a remand.

3. Although respondent's hypothetical method of capitalizing income was arguably correct, so was petitioner's actual method. The tribunal's lack of specific findings on this question as well as its failure to specifically explain what weight, if any, it gave to the two land contract sales compels a remand for amplification of its opinion. On remand, the tribunal should also explain whether the income approach is more suitable than the market approach under the facts of this case and what effect, if any, the city assessor's post-inspection appraisal had upon his TCV determination under the market approach.

4. On remand, the tribunal shall consider the possible effect

REFERENCES

Am Jur 2d, State and Local Taxation §§ 704 *et seq.*, 753 *et seq.*, 759-768, 780, 787, 796.

See the annotations in the ALR3d/4th Quick Index under Taxes.

of functional obsolescence of the apartment building upon the valuation approach which the tribunal ultimately adopts.

Reversed and remanded.

1. TAXATION — TAX TRIBUNAL — APPEAL — CONSTITUTIONAL LAW.

The Michigan Tax Tribunal is required to provide a concise statement of facts and conclusions of law supporting a decision; the Court of Appeals reviews such decisions by determining whether there was competent, material, and substantial evidence to support the decision; the absence of such evidence or the adoption of a wrong principle constitutes an error of law that compels reversal (Const 1963, art 6, § 28; MCL 24.285, 205.726, 205.751; MSA 3.560[185], 7.650[26], 7.650[51]).

2. TAXATION — ASSESSMENT OF PROPERTY — TAX TRIBUNAL.

The Michigan Tax Tribunal must make its own finding of true cash value in arriving at its determination of a lawful property assessment; any method for determining true cash value which is recognized as acceptable and reasonably related to fair market value is an acceptable indicator of true cash value; it is cause for remand if the tribunal merely affirms the assessment as placed on the rolls by the assessing authority (MCL 205.737[1]; MSA 7.650[37][1]).

3. TAXATION — ASSESSMENT OF PROPERTY — TAX TRIBUNAL.

There are three generally accepted methods of valuation for tax assessment purposes; the capitalization-of-income approach, the cost-less-depreciation approach, and the market approach; it is the Michigan Tax Tribunal's duty to select the method which most accurately determines true cash value after considering all the facts before it.

4. TAXATION — ASSESSMENT OF PROPERTY — TRUE CASH VALUE — BURDEN OF PROOF.

The petitioner has the burden of proof in establishing the true cash value of his property in a dispute over the determination of a lawful property assessment heard by the Michigan Tax Tribunal (MCL 205.737[3]; MSA 7.650[37][3]).

5. TAXATION — ASSESSMENT OF PROPERTY — TRUE CASH VALUE.

The selling price of a particular piece of property is not conclusive evidence of the value of the property; a sale does not indisputably determine true cash value or fix market price.

6. TAXATION — ASSESSMENT OF PROPERTY — TRUE CASH VALUE — CAPITALIZATION-OF-INCOME METHOD.

The capitalization-of-income method of valuation has been de-

scribed as the most appropriate method for evaluation the true cash value of income-producing property; in calculating value, actual expenses and income may be used, however, such is not necessarily required and market data pertaining to income and expenses may be used when such results in a more accurate determination of true cash value.

7. TAXATION — ASSESSMENT OF PROPERTY — TAX TRIBUNAL — FUNC-
   TIONAL OBSOLESCENCE.
   It is proper for the Michigan Tax Tribunal to consider the possible effect of the functional obsolescence of property upon the valuation approach which the Tax Tribunal adopts in determining the property's lawful assessment.

*Thrun, Maatsch & Nordberg, P.C.* (by *Patrick J. Berardo* and *Gordon W. VanWieren*), for petitioner.

*Alvan P. Knot,* Chief Assistant City Attorney, for respondent.

Before: ALLEN, P.J., and HOOD and R. C. LIVO,* JJ.

PER CURIAM. Petitioner appeals as of right from the Michigan Tax Tribunal's opinion and order that found that the true cash value (TCV) for the 1982 and 1983 tax years for petitioner's twenty-eight-unit apartment building known as Southwind Apartments was $421,600 for each year, the same TCV found by the respondent assessing unit. At the hearing, petitioner contended that respondent's assessment level exceeded fifty percent of TCV because it failed to consider the building's present economic income. Petitioner presented testimony that the property was sold on land contract in 1979 for $355,000, but the purchaser defaulted in 1983. With difficulty, petitioner resold the property by land contract in 1983 for $305,000. At the

* Circuit judge, sitting on the Court of Appeals by assignment.

hearing, petitioner ultimately contended that TCV for the property was $290,000.

Petitioner offered testimony through Kenneth Fowler, who purchased the property for First City Corporation in 1974, that, although the location of the building was not bad, it had numerous deficiencies which decreased the property's value. The lot was small with virtually no green area, the parking lot was in poor condition and the apartments were small. The heating system made the apartments difficult to heat, they had virtually no insulation and the sewer clogged continously and backed up into the apartment. The appliances were worn out, particularly the dishwashers, which leaked and caused severe problems. Fowler termed the property "a classic example of a building that is functionally obsolescent," the "bottom of the barrel" in relation to neighboring apartments.

In 1979, the last year in which petitioner was directly involved in rentals at the building, there was a strong rental market, but the building has less than ninety percent average occupancy rate. The first land contract purchaser showed petitioner an unverified 1981 total income from the building of $60,950, a figure which seemed reasonable to Fowler. Petitioner had no actual income or operating expenses, but Fowler thought the 1981 figures might also be reasonable in 1982, with a slight increase in expenses and a decrease in income. Petitioner capitalized at twelve percent in 1981 net income of $27,692 and concluded that the building was worth $230,766. Fowler regarded both land contract prices as having been too high, but the buyers presumably paid those prices because they thought they could "turn the property around" through good management.

The Lansing City Assessor appraised the prop-

erty for 1981 and indicated that the same value would also apply to 1982, based on his subsequent appraisal. He indicated that he considered all three traditional approaches to valuation, but thought the market approach was the most useful, given a strong market for similar properties in Lansing.

The cost approach to valuation, made using the Marshall Valuation Service manual, gave a value of $499,000 when land value was added. The assessor took this as an upper limit. He never used the cost approach alone to value a property.

In using the income approach, the assessor considered "economic rent," essentially the rent that comparable units produced elsewhere in Lansing at the same time. He had no idea what rents were actually charged at Southwind Apartments, but based on his market assumptions, including a five percent allowance for vacancy and operating expenses lower than those testified to by petitioner, the assessor determined a net economic income of $57,754. Applying a twelve percent capitalization rate, he valued the property at $423,000.

The assessor also examined several comparable sales to determine selling price per unit. He felt that Southwind Apartments are located in the Lansing "hot spot," the only area of rapid development in the city. He visited all the comparables, and regarded most as very similar to Southwind Apartments in terms of their lack of amenities. After making the necessary adjustments to five comparables, the assessor concluded that the property's value was $440,000. He made no adjustments for unit size, apparently concluding that the comparable apartments were the same. Two of the comparable sales were not within Lansing city limits.

The assessor visited the property in the summer

of 1982, but did not look at the inside of the property until December 29, 1982, after he completed his appraisal report. He examined a one-bedroom and a two-bedroom apartment, both vacant. They appeared to be in a "little better condition" than the exterior of the building, which he described as "in need of attention." He did not examine the appliances. Both units were smaller than the average equivalent apartment in Lansing.

The assessor's visit did not change his mind about the TCV he had determined. The assessor knew of the 1979 land contract sale. He suggested that, so far as he knew, the $355,000 may have been fair market value at the time the property was first sold.

The tribunal ruled that the second land contract sale, which occurred seven months after the 1982 tax day, should be considered to support the tribunal's valuation conclusion. As to petitioner's contention that TCV was more accurately reflected by the sales prices in the two arm's-length land contract sales than in the appraisal report's opinion of value, the tribunal stated that, although sale price can never be ignored as a factor, it is not of and by itself controlling. The tribunal compared price to market value, saying,

> [m]arket value, on the other hand is an estimate resulting from careful consideration of all data, with primary reliance on that data which reflects the actions of responsible, prudent buyers and sellers under conditions of a fair sale.

Adopting the respondent's valuation conclusion, the tribunal concluded with the laconic statement that: "Respondent's appraisal report used market analysis, cost less depreciation and capitalization

of income to arrive at an opinion of value. This procedure is recognized as accurate and is an acceptable indicator of true cash value for tax purposes."

Petitioner now contends that the tribunal's valuation decision cannot withstand scrutiny by this Court as provided by Const 1963, art 6, § 28:

> All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record. Findings of fact in workmen's compensation proceedings shall be conclusive in the absence of fraud unless otherwise provided by law.
>
> In the absence of fraud, error of law or the adoption of wrong principles, no appeal may be taken to any court from any final agency provided for the administration of property tax laws from any decision relating to valuation or allocation.

As stated, our review of the tribunal's decision requires us to inquire whether there was competent, material, and substantial evidence to support that decision. The absence of such evidence or the adoption of a wrong principle constitutes an error of law that compels reversal. See *Antisdale v Galesburg,* 420 Mich 265, 277; 362 NW2d 632 (1984); *Teledyne Continental Motors v Muskegon Twp,* 145 Mich App 749, 753; 378 NW2d 590 (1985); *Kern v Pontiac Twp,* 93 Mich App 612, 620; 287 NW2d 603 (1979). In order to facilitate appellate review, MCL 205.751; MSA 7.650(51) and MCL

205.726; MSA 7.650(26), the latter of which incorporates MCL 24.285; MSA 3.560(185) of the Administrative Procedures Act, require the tribunal to provide a concise statement of facts and conclusions of law. *Plymouth Twp v Wayne Co Bd of Comm'rs,* 137 Mich App 738, 756; 359 NW2d 547 (1984); *Almira Twp v Benzie Co Tax Allocation Bd,* 80 Mich App 755, 760-761; 265 NW2d 39 (1978). In this case, it is the tribunal's failure to set forth the basis for its conclusions of law which precludes us from determining whether the tribunal's decision was supported by competent, material and substantial evidence and was free of errors of law or the adoption of wrong principles and instead mandates remand to the tribunal.

As we stated in *Plymouth Twp,* where we held that the tribunal's opinion was inadequate:

> The tribunal's sparse opinion in this highly complex area merely recites the issues and concludes that the proofs failed to establish unfair or discriminatory assessments or that the City of Dearborn was equalized in excess of 50 percent of true cash value. As stated in *Almira Twp v Benzie County Tax Allocation Bd,* 80 Mich App 755, 761; 265 NW2d 39 (1978), "Merely stating that the tribunal has reviewed the evidence and finds it to be insufficient as a basis for relief is *not* adequate." (Emphasis in original.) In other words, the opinion in the present case violated MCL 205.751(1); MSA 7.650(51)(1) because it did not contain "a concise statement of facts and conclusions of law, stated separately." [137 Mich App 756.]

In the case at bar, the tribunal did not even go so far as to state what evidence it had reviewed. Nor is it clear from its opinion that the tribunal made its own determination of TCV rather than merely affirming respondent's value. The tribunal must make its own finding of TCV in arriving at its

determination of a lawful property assessment. *Consolidated Aluminum Corp, Inc v Richmond Twp*, 88 Mich App 229, 232-233; 276 NW2d 566 (1979); MCL 205.737(1); MSA 7.650(37)(1). It is cause for remand if the tribunal merely affirms the assessment as placed on the rolls by the assessing authority. *Alhi Development Co v Orion Twp*, 110 Mich App 764, 767-768; 314 NW2d 479 (1981); *Kern, supra*, p 620. Because the Tax Tribunal's opinion is inadequate, we are unable to determine under the substantial evidence standard whether the tribunal adopted wrong principles in affirming the respondent assessing unit's valuation conclusion.

Any method for determining TCV which is recognized as acceptable and reasonably related to fair market value is an acceptable indicator of TCV. *Presque Isle Harbor Water Co v Presque Isle Twp*, 130 Mich App 182; 344 NW2d 285 (1983). Generally, there are three accepted methods of valuation: the capitalization-of-income approach, the cost-less-depreciation approach, and the market approach. The tribunal's duty is to select the method which most accurately determines TCV after considering all the facts before it. *Antisdale, supra*, pp 276-277; *Clark Equipment Co v Leoni Twp*, 113 Mich App 778, 781-782; 318 NW2d 586 (1982).

In this case, respondent presented evidence of all three methods of valuation, including evidence of comparable sales as well as detailed analyses of cost of replacement and capitalization of income. Respondent rejected the cost approach as being at the upper limit of valuation. Petitioner, who had the burden of proof before the tribunal, MCL 205.737(3); MSA 7.650(37)(3), offered no market-approach appraisal in the form of comparables which it perceived as being more similar to Southwind

Apartments and which would support its contention of lower value. Instead, petitioner's evidence primarily involved the two land contract sales, testimony concerning the functional obsolescence of the building, and unverified income and expense information for 1981. Only vague estimates were given for 1982 income and expenses.

As the tribunal stated in its opinion, the selling price of a particular piece of property is not conclusive evidence of that property's value. *Antisdale, supra,* p 278. See also *Davidson v Lansing,* 356 Mich 697, 700; 97 NW2d 592 (1959). A sale does not indisputably determine TCV or fix market price. A great many factors enter into the determination of a sale price, such as need or ability to utilize the property, potential income, actual income, age and physical condition, tax considerations, and financing costs. Sales price, particularly a single sales price, is only one index of TCV. *Fisher-New Center Co v State Tax Comm,* 380 Mich 340, 361-362; 157 NW2d 271 (1968), rev'd on other grounds on reh 381 Mich 713; 167 NW2d 263 (1969). However, we also recognize that, if the property could not be sold for what the tribunal ultimately determined was its TCV, that amount was not the property's usual selling price. *Presque Isle Harbor Water Co, supra,* pp 193-194.

Respondent has suggested that the land contract sales prices do not accurately reflect TCV because the purchasers were not knowledgeable about dealing in rental properties. However, if probative at all, this would tend to suggest that the prices paid were higher than the property was worth, since no experienced seller is going to take less than the property is worth because his purchaser is not knowledgeable. From its opinion, it appears that the tribunal considered the land contract sales, but was unconvinced. It relied instead on respon-

dent's evidence which was based on all three methods of valuation. However, the tribunal made no finding as to the most appropriate method under the circumstances—this failure also requires remand. *Pantlind Hotel Co v State Tax Comm,* 3 Mich App 170, 176; 141 NW2d 699 (1966), aff'd 380 Mich 390; 157 NW2d 293 (1968).

The capitalization-of-income method has been described as the most appropriate method for evaluating the TCV of income-producing property. *Uniroyal, Inc v Allen Park,* 138 Mich App 156, 160; 360 NW2d 156 (1984); *Northwoods Apartments v Royal Oak,* 98 Mich App 721, 725; 296 NW2d 639 (1980). In calculating value, actual expenses and income may be used. *Northwood Apts, supra,* p 727. However, such is not necessarily required. Market data pertaining to income and expenses may be used when such results in a more accurate determination of TCV. *Wolverine Tower Associates v Ann Arbor,* 96 Mich App 780, 782; 293 NW2d 669 (1980); *Ramblewood Associates v Wyoming,* 82 Mich App 342, 346; 266 NW2d 817 (1978). In *Congresshills Apartments v Ypsilanti Twp,* 102 Mich App 668; 302 NW2d 274 (1981), we held that where the actual rents obtainable were legally limited by federal restrictions, hypothetical rents have no meaning as a basis for determining income. See *CAF Investment Co v State Tax Comm,* 392 Mich 442; 221 NW2d 588 (1974), and *CAF Investment Co v Saginaw Twp,* 410 Mich 428; 302 NW2d 164 (1981); see also the 1982 and 1983 amendments to MCL 211.27(4); MSA 7.27(4) defining "present economic income" and allowing the use of hypothetical income in assessment.

Thus, although respondent's hypothetical method of capitalizing income was arguably correct, so was petitioner's actual method. Perhaps the tribunal rejected petitioner's value conclusions

because Mr. Fowler gave only unverified income and expense information for 1981 and only estimates for 1982. However, the tribunal's lack of specific findings on this question as well as its failure to specifically explain what weight, if any, it gave to the two land contract sales compels us to remand for amplification of its opinion. On remand, the tribunal should also explain whether the income approach is more suitable than the market approach under the facts of this case and what effect, if any, the city assessor's post-inspection appraisal had upon his TCV determination under the market approach.

Finally, although petitioner also offered considerable evidence of functional obsolescence in the apartment building, the tribunal similarly ignored petitioner's obsolescence proofs in its opinion. In *Teledyne Continental Motors, supra,* p 756, we remanded to the tribunal for a specific determination of whether the replacement-cost approach used by the tribunal in that case considered such functional obsolescence. Although it appears that neither of the parties to the instant appeal considered the replacement-cost method appropriate to this case, on remand, we direct the tribunal to consider the possible effect of such obsolescence upon the valuation approach which the Tax Tribunal ultimately adopts.

Reversed and remanded for further proceedings not inconsistent with this opinion.