### UNIROYAL, INC v CITY OF ALLEN PARK

Docket No. 69271. Submitted April 10, 1984, at Detroit.—Decided
July 24, 1984

The City of Allen Park assessed a parcel of real property for
taxation purposes. The property included an 8.76-acre parcel
upon which was located an office building and a parking area.
Petitioner, Uniroyal, Inc., constructed the office building and
parking area and sold it to Imboden Properties, Inc., under a
lease-back agreement which provided a schedule of rentals to
the year 2031 and that petitioner was to pay all costs inciden-
tal to ownership, including taxes. Imboden has since sold the
property to another owner, subject to the Uniroyal lease.
Petitioner challenged the city's and Wayne County's assess-
ments of the entire property for the years 1979, 1980 and 1981.
The Tax Tribunal valued petitioner's land as an unencumbered
fee interest. Petitioner appeals from the Tax Tribunal's valua-
tion of the office building parcel, alleging that the tribunal
erred in its assessment of the parcel as an unencumbered fee
interest. *Held:*

1. The tribunal erred in using a hypothetical market rent in
determining the "present economic income" of the office parcel
to determine its true cash value. The actual rent established by
the lease should have been used and the property valued as an
encumbered property.

2. The city failed to introduce any evidence to show that use
of the actual rent valuation would have been improper on the
ground that it was too speculative or did not reflect an accurate
picture of the fair market value of the proeprty.

3. Recent amendments of the General Property Tax Act were
not considered by the Court of Appeals because they were not
in effect for the tax years involved.

Reversed.

REFERENCES FOR POINTS IN HEADNOTES

[1-5] 71 Am Jur 2d, State and Local Taxation §§ 201-205.
72 Am Jur 2d, State and Local Taxation §§ 759-769.
[3-5] Income or rental value as a factor in evaluation of real property
for purposes of taxation. 96 ALR2d 666.

1. TAXATION — REAL PROPERTY — TRUE CASH VALUE.

Real property is assessed for taxation purposes according to its true cash value, which is defined as the usual selling price at the place where the property is at the time of assessment, being the price which could be obtained for the property at private sale, and not at forced or auction sale (Const 1963, art 9, § 3; MCL 211.27[1]; MSA 7.27[1]).

2. TAXATION — REAL PROPERTY — TRUE CASH VALUE.

There are three generally recognized methods for arriving at the true cash value of a particular parcel of land: (1) market value as determined by comparable selling prices, (2) reproduction cost less depreciation, and (3) capitalization of income.

3. TAXATION — REAL PROPERTY — TRUE CASH VALUE — INCOME PRODUCING PROPERTY.

The Tax Tribunal, in evaluating the true cash value of real property, must select from the generally recognized methods of valuation the method that is likely to render the most accurate result; in the case of income-producing property, the capitalization of income method is the most appropriate for determining true cash value.

4. TAXATION — REAL PROPERTY — PRESENT ECONOMIC INCOME — ACTUAL RENT — TRUE CASH VALUE.

Actual rent established by a lease, not a hypothetical market rent, should be relied upon in determining the "present economic income" of a rental property for purposes of establishing true cash value where the property was burdened with a long-term lease that became increasingly unfavorable to the owner as time passed.

5. TAXATION — REAL PROPERTY — PRESENT ECONOMIC INCOME — ACTUAL RENT — FAIR MARKET VALUE.

The use of actual rent may not always be appropriate to the determination of the present economic income of a particular parcel of real property, but any exception to actual rent valuation should be premised on a finding that actual rent is either too speculative or does not reflect an accurate picture of the property's fair market value.

*Miller, Canfield, Paddock & Stone* (by *Samuel J. McKimm, III,* and *John D. Rayis*), for petitioner.

*John D. O'Hair,* Wayne County Corporation Counsel, *Robert G. Schuch,* Assistant Corporation

Counsel, and *Pagnucco & Kruse* (by *Kenneth D. Kruse),* for respondents.

Before: HOOD, P.J., and M. J. KELLY and R. C. LIVO,* JJ.

PER CURIAM. Petitioner appeals from property tax valuations by the Michigan Tax Tribunal for the tax years 1979, 1980 and 1981 on an 8.76-acre parcel of land in Allen Park, Michigan. Located on that property is a two-story office building and an adjacent parking area.

Petitioner purchased the 8.76-acre parcel of land as part of a 36.43-acre tract in 1964 and constructed the office building and parking area in 1965. Petitioner subsequently entered into a sale and lease-back arrangement with Imboden Properties, Inc., a Delaware corporation, as to the office parcel only. Imboden's purchase of the property was financed by its parent company, Stone & Webster Corporation. The terms of the lease-back agreement between petitioner and Imboden were summarized as follows by the Tax Tribunal:

"The Imboden-Uniroyal lease was executed on October 15, 1965, the primary term ending January 14, 1991, and is net rent to landlord with assignment and subletting permitted. Mr. Nelson [petitioner's expert witness] testified that, in his opinion, the lease was executed on commercially reasonable terms: quarterly rent of $31,233 until January 14, 1991; 10-year option to January 14, 2001 at a rent of $6,480/quarter; then five 5-year options to January 14, 2031 at a rent of $3,770/quarter with purchase options on January 14, 1991 for $754,000, January 14, 2001 for $329,875 and January 14, 2006 for $150,800."

The agreement also provided that petitioner was

* Circuit judge, sitting on the Court of Appeals by assignment.

to pay all costs incidental to ownership, including property taxes.

Since the execution of the original lease, Imboden has sold the office parcel, encumbered by the Uniroyal lease, to a private trust created under the laws of Massachusetts. Petitioner has sublet a portion of the office building to another corporation.

On July 5, 1979, Uniroyal filed a petition with the Tax Tribunal challenging respondent City of Allen Park's 1979 assessment of the entire 34.63 acres of land. The petition was subsequently amended to include challenges to the 1980 and 1981 assessments as well. Following a hearing in December of 1981, the Tax Tribunal valued petitioner's land as an unencumbered fee interest. Petitioner appeals the tribunal's valuation of the office parcel only.

According to the Tax Tribunal, the true cash value of the office parcel for 1979 and 1980 is $2,090,000, and for 1981 the true cash value is $1,980,000. Under petitioner's encumbered fee valuation, the true cash value of the office parcel is $1,420,000, $1,250,000 and $1,095,000, for the tax years 1979, 1980 and 1981, respectively.

The sole issue before us is whether the Tax Tribunal erred as a matter of law or adopted a wrong principle in valuing the office parcel as an unencumbered fee interest. Const 1963, art 6, § 28; MCL 211.152; MSA 7.210. We find that the tribunal erred as a matter of law in its valuation of the office parcel and we therefore reverse and remand to the tribunal for further proceedings consistent with this opinion.

Real property is assessed for taxation purposes according to its "true cash value", Const 1963, art 9, § 3, which is defined in the General Property Tax Act, MCL 211.1 *et seq.;* MSA 7.1 *et seq.,* as:

"the usual selling price at the place where the property to which the term is applied is at the time of assessment, being the price which could be obtained for the property at private sale, and not at forced or auction sale. A sale or other disposition by the state or an agency or political subdivision of the state of land acquired for delinquent taxes or an appraisal made in connection with the sale or other disposition or the value attributed to the property of regulated public utilities by a governmental regulatory agency for rate making purposes shall not be considered controlling evidence of true cash value for assessment purposes. In determining the value the assessor shall also consider the advantages and disadvantages of * * * present economic income of structures". MCL 211.27(1); MSA 7.27(1).

True cash value is synonomous with fair market value to the owner. *CAF Investment Co v State Tax Comm (CAF I),* 392 Mich 442, 450; 221 NW2d 588 (19740; *CAF Investment Co v Saginaw Twp (CAF II),* 410 Mich 428, 459; 302 NW2d 164 (1981).

There are three generally recognized methods for arriving at the true cash value of a particular parcel of land: (1) market value as determined by comparable selling prices (market method), (2) reproduction cost less depreviation (cost method) and (3) capitalization of income (income method). *Clark Equipment Co v Leoni Twp,* 113 Mich App 778, 781; 318 NW2d 586 (1982); *Antisdale v Galesburg,* 109 Mich App 627, 630; 311 NW2d 432 (1981), *lv gtd* 418 Mich 874 (1983). The Tax Tribunal, in evaluating true cash value, must select from these methods the one that is likely to render the most accurate result. *Tatham v Birmingham,* 119 Mich App 583, 591; 326 NW2d 568 (1982). This Court has held and the parties in the instant case agree that the income method is the most appropriate method for evaluating the true cash value of income producing property. *Northwood Apartments*

*v Royal Oak,* 98 Mich App 721, 725; 296 NW2d 639 (1980).

The question in this case is whether the Tax Tribunal improperly relied upon a hypothetical market rent rather than the actual rent established by the lease and required to be paid by Uniroyal to Imboden in determining the "present economic income" of the office parcel. MCL 211.27(4); MSA 7.27(4). We hold that, under *CAF I* and *CAF II,* the Tax Tribunal should have used actual rent for the present economic income of the property. As with the property in the *CAF* cases, the property in this case was burdened with a long-term lease involving economic terms that became increasingly unfavorable to the owner as time passed. At the hearing, petitioner introduced evidence, undisputed by respondent, establishing that the lease transaction was negotiated at arm's length by equal parties and on commercially reasonable terms at the time the lease was executed. Thus, the true cash value of the encumbered office parcel in this case should have been valued on that basis and not as an unencumbered fee interest.

We recognize that the Tax Tribunal distinguished the instant case from the two *CAF* cases but we reject those distinctions as immaterial. There is nothing in either Supreme Court opinion to suggest that present economic income should not be based on actual income where the lessee, rather than the owner of the property, is responsible for property taxes, even where the lease is favorable to the lessee-taxpayer. In both *CAF I* and *CAF II,* the Supreme Court acknowledged that actual rent may not always be appropriate to the determination of the present economic income of a particular parcel of property. However, the Court made clear that exceptions to actual rent valua-

tions should be premised on a finding that actual rent is either too speculative or does not reflect an accurate picture of a property's fair market value. *CAF I,* pp 455-456; *CAF II,* pp 460-461. Respondent failed to introduce any evidence which would support the tribunal's rejection of the actual rent valuation on the ground that it is either too speculative or does not reflect an accurate picture of the fair market value of the office parcel.

While we realize that the Michigan Legislature has recently amended the General Property Tax Act in response to the Supreme Court's decisions in *CAF I* and *CAF II,* these amendments were not in effect for the tax years involved in the instant case and we thus do not consider the effect of such legislation on the tribunal's valuation of the true cash value of petitioner's office parcel.

Reversed.