EDWARD ROSE BUILDING COMPANY v INDEPENDENCE
TOWNSHIP

Docket No. 91631. Submitted August 3, 1987, at Detroit. Decided
November 3, 1987. Leave to appeal applied for.

Edward Rose Building Company, a home builder developing a
subdivision in Independence Township, Oakland County, peti-
tioned for review of the assessments on the unsold lots remain-
ing in the subdivision. The builder argued that the true cash
value of the unsold lots should be determined by reference to
sales of groups of lots among developers. The township argued
that, since the builder was not selling the lots on a group basis
to other builders but, rather, was selling the lots on an individ-
ual basis when purchased in conjunction with a house built by
the builder, the true cash value of the unsold lots should be
determined by reference to the selling price of the comparable
lots, i.e., the true cash value of the unsold lots should be
computed by multiplying the number of unsold lots by the
average selling price of the comparable lots. The Tax Tribunal
hearing officer agreed with the township's method of valuation.
On review, the Tax Tribunal, while agreeing that the true cash
value of the individual unsold lots was properly determined by
using a market approach in which the true market value of
comparable lots was used to calculate the market value of the
individual unsold lots and that the true cash value for the
remaining unsold land was properly computed by taking the
cumulative total of the true cash values of the individually
valued unsold lots, held that the true cash value of each
individual unsold lot should be reduced by eighteen percent to
reflect the builder's development costs through the holding
period. The township appealed.

The Court of Appeals held:

REFERENCES

Am Jur 2d, Evidence §§ 394 et seq.

Sale price of real property as evidence in determining value for tax
assessment purposes. 89 ALR3d 1126.

Admissibility of hearsay evidence as to comparable sales of other
land as basis for expert's opinion as to land value. 12 ALR3d
1064.

Admissibility on issue of value of real property of evidence of sale
price of other real property. 85 ALR2d 110.

Since there were no group-lot sales, the Tax Tribunal properly rejected the builder's group-lot sale approach and rather used the cumulative total of the true cash values of the individual unsold lots. However, the Tax Tribunal erred in arbitrarily reducing the true cash values that were found for the unsold lots by eighteen percent to represent certain development costs, since there were no proofs that such development costs were in any way related to the actual market value of the lots.

Affirmed in part, reversed in part and remanded.

TAXATION — REAL PROPERTY — TRUE CASH VALUE.

The proper method for determining true cash value for improved unsold lots in a residential subdivision which are being held and sold on an individual basis by the developer of the subdivision is a market approach in which the market value of the unsold lots is determined by using the sale prices of comparable lots and the true cash value for the remaining unsold land in the subdivision is the cumulative total of the true cash values of the individual unsold lots, undiminished by any hypothetical percentage representing supposed holding costs to the developer incurred in retaining the lots until sold to individual owners.

*Honigman, Miller, Schwartz & Cohn* (by *Thomas J. Beale* and *Ralph R. McKee*), for petitioner.

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton* (by *Gerald A. Fisher*), for respondent.

Before: SHEPHERD, P.J., and HOOD and T. M. BURNS,* JJ.

SHEPHERD, P.J. Respondent township appeals from a March 21, 1986, decision by the Michigan Tax Tribunal which lowered the true cash value (TCV) of petitioner's land, resulting in a lower tax assessment for petitioner. We reverse in part and affirm in part.

In dispute are the 1981-84 real property tax assessments on subdivision lots owned by peti-

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

tioner, a developer. The property involved was a single-family residential subdivision known as Lake Oakland Woods. The subdivision had been developed to the point that utilities, sewer and water were available.

The entire thrust of petitioner's argument before the Tax Tribunal and on appeal is that the lots must be taxed as a whole rather than as one hundred individual units in order to fairly judge the property's fair market value. Thus, at the March 26, 1985, hearing before Hearing Officer James R. Neumann, petitioner's appraiser based the property's value on comparable sales of groups of lots to builders. Indeed, on cross-examination, respondent's appraiser concluded that no prudent builder would purchase the lots as a whole at the "retail" rate, i.e., sale of individual lots to a home buyer times one hundred.

Petitioner was involved in (1) the development of raw land to the point of platting for sale as lots ready for building and (2) building of the home on the lot for sale to the ultimate consumer, the homeowner. The property as a whole, as developed lots, was not on the market to builders nor was it on the market to individuals who wanted to purchase only the lot. Petitioner is a developer and sold homes on lots it had improved.

Respondent's argument before the hearing officer was that the lots should be valued on an individual lot basis. Respondent's appraiser compared sales of other lots in the area to reach his valuation. Respondent further argued that its position was strengthened because petitioner refused to market the lots as a group, but rather only sold the lots with homes it built on the developed lots.[1]

The hearing officer agreed with respondent and

[1] On appeal, respondent argues that the Tax Tribunal's decision is in violation of the Equal Protection and Uniformity in Tax clauses of

in a proposed opinion offered the following comparison:

| Tax Year | Petitioner TCV | Per Lot | Respondent TCV | Per Lot |
|---|---|---|---|---|
| 1981 | $1,000,000 | $10,000 | $1,450,000 | $14,500 |
| 1982 | 900,000 | 9,000 | 1,300,000 | 13,000 |
| 1983 | 810,000 | 8,100 | 1,170,000 | 11,700 |
| 1984 | 780,000** | 8,200/ 10,200 | 1,300,000* | 13,000 |

* It would appear the Respondent's assessor and appraiser were unaware that 8 lots had been sold during 1983 and 13 others improved with basements.

** Respondent's TCV should probably be adjusted to $1,196,000 (92 × $13,000) and perhaps $2000 per basement should be added for 13 basements. 92 lots; 79 @ $8,200 and 13 @ $10,200 (basements).

The hearing officer essentially adopted respondent's valuation. The Tax Tribunal, however, disagreed with the hearing officer. The Tax Tribunal took the "wholesale" approach. The Tax Tribunal agreed with respondent as to the value of the lots, valued individually. Then, the Tax Tribunal went on to discount this value by a factor of eighteen percent which it considered as holding costs during the marketing period. Thus, the Tax Tribunal adopted respondent's assessment less eighteen per cent.

I

This Court's standard of review of Tax Tribunal decisions is set forth in Const 1963, art 6, § 28:

the Michigan Constitution. Const 1963, art 1, § 2 and art 9, § 3. Normally it is the taxpayer and not the taxing unit which makes this argument. See e.g. *Armco Steel Corp v Dep't of Treasury,* 419 Mich 582; 358 NW2d 839 (1984); see also *Avis Rent-A-Car System, Inc v City of Romulus,* 65 Mich App 119, 128-129; 237 NW2d 209 (1975), aff'd 400 Mich 337; 254 NW2d 555 (1977). We also note that respondent does *not* challenge the statute as unconstitutional. In any event, we choose to review on the more narrow ground of whether the Tax Tribunal erred in its determination of TCV as it related to petitioner's real property.

In the absence of fraud, error of law or the adoption of wrong principles, no appeal may be taken to any court from any final agency provided for the administration of property tax laws from any decisions relating to valuation or allocation.

The Legislature is charged with the duty of providing a uniform system of real property taxation based on assessment of true cash value. Const 1963, art 9, § 3. "Cash value" means "usual selling price," meaning the price which could be obtained at a private sale rather than at a forced sale. MCL 211.27; MSA 7.27. "True cash value" and "fair market value" are synonymous. *CAF Investment Co v State Tax Comm,* 392 Mich 442, 450; 221 NW2d 588 (1974).

Generally, there are three accepted methods of valuation: the capitalization-of-income approach, the cost-less-depreciation approach, and the market approach. *Antisdale v Galesburg,* 420 Mich 265, 276-277; 362 NW2d 632 (1984). It is the duty of the Tax Tribunal to accept the approach which provides the most accurate valuation under the circumstances of each case. 420 Mich 277. In the instant case, we believe the Tax Tribunal properly selected the market approach as the most accurate.

In the instant case the hearing officer concluded:

This hearing officer generally agrees with the theory argued by petitioner, to wit, that the true cash value of units (whether lots, condominiums or acres) of property are not necessarily equivalent to the value of the whole group in the hands of one owner. See *Slatkin v Dearborn,* MTT Docket No. 54934, entered April 24, 1984. I would characterize a differential in value based upon number of units as being similar to a quantity discount, a reduced price for reduction of risk, holding expense such as financing (absorption over time) and marketing

costs. However, on the facts herein, where peti-
tioner declines to sell lots either individually or in
groups, but only sells a lot in conjunction with the
sale of a house, it seems to be a self-imposed
limitation or restriction on the alienability of its
property such that valuing the lots as a group
might be inappropriate.

Although we do not agree that petitioner's mar-
keting decision constitutes a limit on "alienation,"
we do find that his marketing decision had a
significant effect on what can properly be consid-
ered fair market value. Petitioner marketed only
individual lots and only with a house petitioner
built. On its own terms, the lots are unavailable
for group-lot sales. The term "fair market value"
presumes a market. Petitioner may not fairly
argue that its property's value is comparable to
other group-lot sales when petitioner specifically
refuses to sell on that basis. The Tax Tribunal is
bound to review the actual facts in a case and not
possible or hypothetical sales in evaluating TCV.
Cf. *Uniroyal v Allen Park,* 138 Mich App 156; 360
NW2d 156 (1984) (where it was held that, in
determining the TCV by a capitalization of income
method, the Tax Tribunal should rely on the ac-
tual rent established by lease and not a hypotheti-
cal market rent).

While petitioner does not sell individual lots
without houses it builds, individual lot sales are a
significantly more accurate way of measuring the
TCV of petitioner's property. The Tax Tribunal is
charged with the duty of accepting the approach
which provides the most accurate valuation under
the circumstances of each case. *Antisdale* at 277.
We therefore find that the Tax Tribunal erred in
interpreting the statutory phrase "true cash
value" when it measured the fair market value of
petitioner's property on a "wholesale" basis where

petitioner did not, in fact, market the property in that fashion.

We further note that, were we to uphold the Tax Tribunal's ruling, it would have the unhappy effect of distinguishing assessments merely on the basis of the extent of the taxpayer's holdings. A large property owner, even though he is marketing individual lots and not proposing multi-lot sales, would be able to claim a significantly reduced assessment, compared to a single lot holder, merely on the basis of extensive holdings. In this context, this strikes us as fundamentally unfair. Const 1963, art 9, § 3.

II

We next address the Tax Tribunal's assessment of the value of petitioner's property. The Tax Tribunal ruled:

> The Respondent has convinced this Tribunal through the market approach, substantiated by a market analysis, that land is 20% of the total improved sale price, and that the subject lots, if sold *individually*, should be valued as follows: 1981, $14,500; 1982, $13,000; 1983, $11,700; and 1984, $13,000.

However, the Tax Tribunal went on to conclude:

> This Tribunal has discounted these "retail" individual values to allow an 18% mark up for the influence of development costs during the holding period of liquidation. Realistically, if the developer sold all the subject lots at the time periods under consideration, he obviously would have sold them as an entire package and the sale price would have been at "wholesale" to allow the buyer a profit when reselling individually.

We believe this discounting was error. We note that petitioner likely derived or will derive an income tax benefit from many of the holding costs. We can find no relation in the record between the assessed TCV of petitioner's property and his business costs. Therefore, we reverse the discount as error. Const 1963, art 6, § 28. We affirm the Tax Tribunal's factual determination as to the value of the individual lots.

An argument was made that the lots were not selling quickly and that this would reduce their value by the "holding-cost" factor of eighteen percent. The reduction in value due to slow sales has nothing to do with costs. If market value is reduced by market conditions, this is a proper subject of proofs. We are not able to perceive how the cost to the developer is related to the price that an arms length buyer is willing to pay. Here, the market value of individual lots as determined by the Tax Tribunal is not challenged on appeal.

We remand to the Tax Tribunal for a computation of the tax for the years in question consistent with this opinion.

Affirmed in part, reversed in part and remanded.