CARRIAGE HOUSE COOPERATIVE v CITY OF UTICA

Docket No. 90206. Submitted December 1, 1987, at Detroit. Decided July 8, 1988.

Carriage House Cooperative, a nonprofit, federally subsidized cooperative providing housing for low and moderate income families pursuant to the provisions of § 221(d)(3) of the National Housing Act of 1959, 12 USC 1715l(d)(3), appealed to the Michigan Tax Tribunal its real estate tax assessments imposed by the City of Utica for tax years 1980, 1981, and 1982. The Tax Tribunal adopted Carriage House's "cooperative sales" market approach to determine the value of the property for assessment purposes. The City of Utica appealed.

The Court of Appeals *held*:

1. Utica's argument that the Tax Tribunal erred by failing to retroactively apply recent amendments to MCL 211.27(4); MSA 7.27(4), regarding the use of economic versus actual income in determining the true cash value of property for tax purposes, is rejected. The 1982 and 1983 amendments to the law did not go into effect until after the tax years in question and do not require retroactive application since they are not remedial in nature. Furthermore, the Legislature intended that the applicable subsection not apply to property when subject to a lease entered into prior to January 1, 1984, for which the terms of the lease governing the rental rate or tax liability have not been renegotiated after December 31, 1983, and to a nonprofit housing cooperative when subject to regulatory agreements between the state or federal government entered into prior to January 1, 1984.

2. The Tax Tribunal did not err in relying on Carriage House's method of determining the value of the property for assessment purposes. None of the three standard methods of appraisal are appropriate for appraising subsidized, nonprofit,

REFERENCES

Am Jur 2d, Condominiums and Co-operative Apartments § 85.
Am Jur 2d, State and Local Taxation §§ 759 *et seq.*
See the Index to Annotations under Co-operative Apartments; Market Value; Taxes.

owner-occupied cooperative apartment complexes encumbered by federal restrictions. The method used by Carriage House is the market approach utilizing mortgage equity technique. The value as derived under this approach is comprised of two components: (1) an "equity" component and (2) a mortgage component. This method is acceptable.

Affirmed.

1. TAXATION — NONPROFIT COOPERATIVE HOUSING CORPORATIONS — TRUE CASH VALUE — PRESENT ECONOMIC INCOME.

An amendment, effective March 30, 1983, to the General Property Tax Act defining "present economic income" as used in the section defining cash value of property for purposes of assessing property taxes does not apply to a nonprofit cooperative housing corporation which is subject to regulatory agreements between the state or federal government entered into prior to January 1, 1984 (MCL 211.27[4]; MSA 7.27[4]; 1982 PA 539; 1983 PA 254).

2. TAXATION — NONPROFIT COOPERATIVE HOUSING CORPORATIONS — TRUE CASH VALUE — MARKET APPROACH — MORTGAGE EQUITY TECHNIQUE.

The market approach of valuation utilizing a mortgage equity technique wherein value is comprised of an equity component and a mortgage component may be utilized to determine the true cash value of a subsidized, nonprofit, owner-occupied cooperative apartment complex encumbered by federal restrictions for taxation purposes where none of the standard methods of valuation are appropriate; under this approach, the equity component is calculated by multiplying the maximum allowable transfer price per unit, pursuant to the cooperative's bylaws, by the total number of units in the cooperative, and the mortgage component is calculated by determining the cash equivalent price or present value of the existing mortgage by determining the amount of money a prospective purchaser would need to invest as of each tax date in order to produce enough income to pay off the mortgage according to its terms; the sum of the equity component and the mortgage component is the market value of the property.

*Michaelene K. Young,* for petitioner.

*William J. McGrail, Jr.,* for respondent.

Before: SULLIVAN, P.J., and CYNAR and R. J. TAYLOR,* JJ.

PER CURIAM. Respondent, City of Utica, appeals as of right from an opinion and judgment of the Michigan Tax Tribunal in a dispute over assessments for the years 1980, 1981, and 1982 on a nonprofit, federally subsidized cooperative, Carriage House Cooperative. Carriage House was built in 1971 to provide housing for low and moderate income families pursuant to the provisions of § 221(d)(3) of the National Housing Act of 1959, 12 USC 1715l(d)(3).

The housing project consists of 138 townhouse units located on 10.74 acres in the City of Utica and is subject to two mortgages. Because of federal interest subsidies, the mortgages carry a below-market interest rate of three percent. The mortgage payments are spread over a forty-year period and, under HUD regulations and the terms of the mortgage agreements, the mortgage obligation binds future purchasers of the property and cannot be prepaid or cancelled without prior approval of the Federal Housing Commissioner.

The members of the cooperative may negotiate the selling price of their interest but are not permitted to sell their interest for more than the maximum transfer price prescribed in the cooperative's by-laws.

Since Carriage House is a § 221(d)(3) housing project, it is not permitted to earn a profit. However, members have substantial tax benefits from their ownership in the cooperative. They receive deductions on their federal income tax for their share of the property's mortgage interest payments, property taxes, and depreciation.

A hearing on this matter was held before a Tax

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Tribunal hearing officer in January and February, 1983, in which expert appraisers testified on behalf of both parties. In an opinion dated February 13, 1985, the hearing officer adopted an income approach to valuation. Both parties filed objections and exceptions to the proposed opinion.

The Tax Tribunal accepted the hearing officer's factual findings but rejected her conclusions. In an opinion dated January 16, 1986, the Tax Tribunal adopted petitioner's "cooperative sales" market approach. The City of Utica appeals. We affirm.

Utica argues first that the Tax Tribunal erred by failing to retroactively apply recent amendments to MCL 211.27(4); MSA 7.27(4), regarding the use of economic versus actual income in determining the true cash value of property for tax purposes.

We initially note that, notwithstanding the fact that Utica raises this question for the first time on appeal, such a question dealing with construction of pertinent statutory provisions warrants our full review for alleged "error of law."

Real property is assessed for taxation purposes according to its "true cash value." Const 1963, art 9, § 3. During the times applicable in this case, MCL 211.27(1); MSA 7.27(1) defined "true cash value" as follows:

> *As used in this act, "cash value" means the usual selling price at the place where the property to which the term is applied is at the time of assessment, being the price which could be obtained for the property at private sale, and not at forced or auction sale.* A sale or other disposition by the state or an agency or political subdivision of the state of land acquired for delinquent taxes or an appraisal made in connection with the sale or other disposition or the value attributed to the property of regulated public utilities by a govern-

mental regulatory agency for rate-making purposes shall not be considered controlling evidence of true cash value for assessment purposes. In determining the value the assessor shall also consider the advantages and disadvantages of location; quality of soil; zoning; existing use; present economic income of structures, including farm structures; present economic income of land if the land is being farmed or otherwise put to income producing use; quantity and value of standing timber; water power and privileges; and mines, minerals, quarries, or other valuable deposits known to be available in the land and their value. [Emphasis added.]

Prior to March 30, 1983, MCL 211.27(4) and (5); MSA 7.27(4) and (5) provided:

(4) Except as provided in subsection (5), property shall be assessed at 50% of its true cash value in accordance with section 3 of article 9 of the state constitution of 1963.

(5) Assessment of property, as required in this section, shall be inapplicable to the assessment of property subject to the levy of ad valorem taxes within voted tax limitation increases to pay principal and interest on limited tax bonds issued by any governmental unit, including a county, township, community college district, or school district before January 1, 1964, if the assessment required to be made under this act would be less than the assessment as state equalized prevailing on the property at the time of the issuance of the bonds. This inapplicability shall continue until levy of taxes to pay principal and interest on the bonds is no longer required. The assessment of property required by this act shall be applicable for all other purposes.

Pursuant to 1982 PA 539, effective March 30, 1983, both of these subsections were deleted and replaced by the following version of subsection (4):

(4) As used in subsection (1), "present economic income" means in the case of leased or rented property the ordinary, general, and usual economic return realized from the lease or rental of property negotiated under current, contemporary conditions between parties equally knowledgeable and familiar with real estate values. The actual income generated by the lease or rental of property shall not be the controlling indicator of its cash value in all cases.

As noted by Utica, this amendment was an apparent attempt by the Legislature to overrule *CAF Investment Co v State Tax Comm,* 392 Mich 442; 221 NW2d 588 (1974) *(CAF I),* and *CAF Investment Co v Saginaw Twp,* 410 Mich 428; 302 NW2d 164 (1981) *(CAF II),* in which the Supreme Court held that "economic income" as used in MCL 211.27; MSA 7.27 means actual income. The Court concluded that when the income approach to valuation was used for property tax purposes in the case of property encumbered by a long term unfavorable lease, the statute requires the actual income of the property to be used. *Uniroyal, Inc v City of Allen Park,* 138 Mich App 156, 162; 360 NW2d 156 (1984).

In 1983, the following three sentences were added to MCL 211.27(4); MSA 7.27(4):

*This subsection shall not apply to property when subject to a lease entered into prior to January 1, 1984 for which the terms of the lease governing the rental rate or tax liability have not been renegotiated after December 31, 1983.* This subsection shall not apply to a nonprofit housing cooperative when subject to regulatory agreements between the state or federal government entered into prior to January 1, 1984. As used in this subsection, "nonprofit cooperative housing corporation" means a nonprofit cooperative housing corpo-

ration which is engaged in providing housing services to its stockholders and members and which does not pay dividends or interest upon stock or membership investment but which does distribute all earnings to its stockholders or members. [Emphasis added. 1983 PA 254, effective December 29, 1983.]

In the instant case, the 1982 and 1983 amendments did not go into effect until after the tax years in question. However, both were in effect during the interim period between the hearing and the time the tribunal issued its decision on February 13, 1985. Although acknowledging these facts and law to the contrary, Utica nonetheless argues that the Tax Tribunal erred by not applying the March 30, 1983, amendment[1] retroactively.

In a somewhat similar situation, this Court refused to apply these amendments in the case before it, simply stating:

While we realize that the Michigan Legislature has recently amended the General Property Tax Act in response to the Supreme Court's decisions in CAF I and CAF II, these amendments were not in effect for the tax years involved in the instant case and we thus do not consider the effect of such legislation on the tribunal's valuation of the true cash value of petitioner's office parcel. [*Uniroyal, supra* at 162.]

Likewise, we also decline to apply the amendments in this instance. Moreover, we are unpersuaded by Utica's argument that these amendments were remedial in nature and thus required

---

[1] That part of the statute reads:

The actual income generated by the lease or rental of property shall not be the controlling indicator of its cash value in all cases. [Section 27(4), 1982 PA 539, effective March 30, 1983.]

retroactive application. *Selk v Detroit Plastic Products,* 419 Mich 1, 9-10; 345 NW2d 184 (1984). Finally, the Legislative intent is that this subsection shall not apply to property when subject to a lease entered into prior to January 1, 1984, for which the terms of the lease governing the rental rate or tax liability have not been renegotiated after December 31, 1983, and to a nonprofit housing cooperative when subject to regulatory agreements between the state or federal government entered into prior to January 1, 1984.

We are next asked to decide whether the Tax Tribunal committed an error of law or adopted a wrong principle by using petitioner's market approach to valuation.

As a general rule, there are three methods of valuation which are acceptable to the Michigan Tax Tribunal and the courts. They are the cost-less-depreciation approach, the capitalization-of-income approach, and the market approach. *Antisdale v City of Galesburg,* 420 Mich 265, 276; 362 NW2d 632 (1984). However, other valid variations of each method are not precluded. *Id.* at 276-277, n 1. The Tax Tribunal is charged with the duty to select the approach which provides the most accurate valuation under the circumstances of the individual case.

Any method for ·determining true cash value which is recognized and reasonably related to the fair market value of the property is an acceptable indication of true cash value. *Pinelake Housing Cooperative v Ann Arbor,* 159 Mich App 208, 221; 406 NW2d 832 (1987). Regardless of the valuation method used, the value determination must represent the amount for which the subject property would sell, that is, the valuation must be based on current market conditions. *Id.*

This Court's review of Tax Tribunal decisions, in

the absence of fraud, is limited to whether the tribunal made an error of law or adopted a wrong principle. The Court accepts the factual findings of the tribunal as final, provided they are supported by competent, material, and substantial evidence. Const 1963, art 6, § 28; *Fisher v Sunfield Twp,* 163 Mich App 735, 741; 415 NW2d 297 (1987), and cases cited therein.

The valuation method proposed by petitioner's appraiser, Laurence Allen, and adopted by the Tax Tribunal, is the market approach utilizing a mortgage equity technique. The value as derived under this approach is comprised of two components: (1) an "equity" component and (2) a mortgage component.

Allen calculated the "equity" component by multiplying the maximum allowable transfer price per unit, pursuant to the cooperative's by-laws, by the total number of units in the cooperative. The mortgage component is calculated by determining the cash equivalent price or present value of the existing mortgage. As previously noted by this Court, this component "is essentially derived by determining the amount of money a prospective purchaser would need to invest as of each tax date in order to produce enough income to pay off the mortgage according to its terms." *Meadowlanes Limited Dividend Housing Ass'n v City of Holland,* 156 Mich App 238, 244; 401 NW2d 620 (1986), lv den 428 Mich 866 (1987). After calculating both components, Allen added the two values together to obtain the market value of the property.

Allen's method of valuation is a variation of the traditional approaches to valuation and has yet to be accorded approval by our courts in valuing § 221(d)(3) nonprofit property. However, in rejecting the traditional approaches to valuation, the Tax Tribunal recognized the unique restrictions

and advantages of the subject property: a subsidized, nonprofit, owner-occupied cooperative apartment complex encumbered by federal restrictions. After review, we can find no indications that the Tax Tribunal committed an error of law or adopted a wrong principle by relying upon Allen's "cooperative sales" approach. In fact, there are indications that this method is favorable in valuing § 221(d)(3) property.

First, the cost approach has been clearly recognized as "an inappropriate method to value low-income, government-subsidized housing projects." *Pinelake, supra* at 222. Next, several panels of the Tax Tribunal have argued persuasively that the income approach is an inappropriate method to value nonprofit cooperatives which attract investors primarily based on their tax benefits rather . than their income-producing potential. Finally, two of respondent's income approaches to valuation failed to rely on *actual* income and expense figures. CAF I, *supra;* CAF II, *supra.* Respondent's valuation estimates based on the market approach were also based on erroneous premises. In Market Valuation A, respondent's expert, Richard Razet, used for comparison conventional apartment complexes which were not subject to the same level of strict government regulations as the subject property. In Variation B, Razet failed to discount the outstanding mortgage to its present value. *Tradewinds East Associates v Hampton Charter Twp,* 159 Mich App 77, 91-92; 406 NW2d 845 (1987), lv den 428 Mich 920 (1987).

At trial, respondent's experts indicated that all three standard methods of appraisal possess problems when applied to § 221(d)(3) property. Consequently, the Tax Tribunal correctly concluded that a different approach would have to be utilized.

In *Meadowlanes, supra,* this Court gave explicit

approval, with one modification, to the mortgage component of Allen's "cooperative sales" formula and it appeared to give approval to the basic outlines of Allen's approach. Although that case involved valuation for a § 236 limited dividend housing project using the "income approach . . . using the mortgage equity method," the principles are relevant and instructive to the disposition of the instant matter.

Although finding Allen's valuation method to be a "reasonable and accurate" valuation method, the *Meadowlanes* Court remanded in order that the Tax Tribunal could consider what effect the interest subsidy had on the value of the federally subsidized income housing. *Id.* at 252. However, in *Tradewinds, supra* at 87-88, this Court rejected the conclusion that the Tax Tribunal must consider the value of a mortgage subsidy, if any, in valuation of property.

In light of *Tradewinds,* we are not willing to upset the Tax Tribunal's decision.

We also find support for the propriety of Allen's "equity component" as well. First, the *Meadowlanes* Court appeared to approve the basic formula underlying petitioner's approach which used both the equity and mortgage components. Additionally, respondent's expert, Razet, found Allen's method for calculating the equity of the property to be acceptable, even though he disagreed with Allen's method for determining the value of the mortgage.

In sum, we can find no indication that the Tax Tribunal committed error or adopted a wrong principle by adopting Allen's approach to assessing the true cash value of the subject property. Consequently, we affirm the Tax Tribunal's determination.

Affirmed.